UNITED STATES of America,
Plaintiff-Appellee,

v.

Jorge Enrique RODRIGUEZ–FRANCO,
Defendant-Appellant.

No. 84–5146
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Jan. 10, 1985.

Theodore J. Sakowitz, Federal Public Defender, Armando Cortina, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Isaac J. Mitrani, Linda Collins-Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, KRAVITCH and HATCHETT, Circuit Judges.

KRAVITCH, Circuit Judge:

This case presents a novel challenge to the Speedy Trial Act: whether time spent in state custody pending probation revocation proceedings is excludable in computing the 70 day time limit pursuant to 18 U.S.C. § 3161 et seq. The court below, in computing the time between indictment and trial on federal charges, excluded the period spent by the defendant in state custody awaiting revocation proceedings. This case also involves the authority of the INS in relation to the fourth amendment. The court below denied a motion to suppress evidence based on this ground. We affirm on both issues.

## I. BACKGROUND

On the afternoon of July 5, 1983, John Ciuro, a United States Border Patrol Agent, and his partner were patrolling a Miami shopping mall in search of illegal aliens. They knew from their experience that this particular mall was frequented by illegal aliens. Ciuro noticed appellant and his two companions, one male, the other female. They appeared to be Hispanic and were not window shopping but instead were peering at and pointing to certain people. When the agents approached, the woman, who was carrying a white shopping bag, immediately turned around and walked away; the two men separated. The agents, who were in plain clothes, identified themselves to the men and stated that they wished to ask about their citizenship. Appellant gave his name as Fabian Otero Garcia and stated that he was born in "Es la Verrada," Puerto Rico. In truth, he was a Colombian named Jorge Enrique Rodriguez-Franco who had been deported from Puerto Rico as an illegal alien two months earlier after having entered as a stowaway. When the men denied knowing their female companion, the officers asked them if they would accompany them to the nearby bench on which the woman was sitting, the bag now beneath the bench. Upon questioning, the woman disclaimed the bag. The officers then opened the bag where they found articles of clothing with multiple tags attached, indicating they had not been paid for. The agents called the state police. A clerk in a mall store identified the merchandise as stolen from his business and recognized the three suspects as having left his store minutes earlier. The three were placed under arrest and taken to the police station. After being read his *Miranda* rights, appellant repeated to Ciuro that he was Fabian Otero Garcia, born in Puerto Rico, and signed a statement to that effect. He also volunteered that he was on probation from Broward County for a previous offense.

On July 28th, armed with an arrest warrant from Broward County, Ciuro again encountered appellant at the mall. Asked for identification, appellant gave a name other than either Rodriguez-Franco or Otero. When arrested he resisted and threat-

ened Ciuro. Later, at the Broward police station, while his handcuffs were being removed, appellant struck Ciuro. He was then placed in state custody awaiting probation revocation proceedings.

Rodriguez-Franco was indicted and subsequently convicted of having falsely represented himself to be a United States citizen in violation of 18 U.S.C. § 911; making a false statement in violation of § 1001; and assaulting a U.S. Border Patrol Officer in violation of 18 U.S.C. § 111.

Prior to trial, appellant filed a motion to suppress evidence claiming a violation of his fourth amendment rights and a motion that the charges be dismissed as a sanction for the government having violated his rights under the Speedy Trial Act. The district court denied both motions.

## II. THE SPEEDY TRIAL ACT

18 U.S.C. § 3161 provides a 70 day period from the date of the information or indictment or the date on which the defendant appeared before a judicial officer of the court, whichever last occurs, and the commencement of the trial. 18 U.S.C. § 3161(c)(1). Failure of the government to bring the defendant to trial within the 70 day period results in dismissal of the case. 18 U.S.C. § 3162(a)(2). Under Section 3161(h), however, certain periods of delay are excludable when calculating the time limit:

> (h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:
>
> (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—[certain specified proceedings].

18 U.S.C. § 3161(h).

Appellant contends that the time span between his indictment and trial exceeded the allowable 70 days and that there was no excludable time; hence, the charges against him must be dismissed in accordance with § 3162(a)(2).

In order to properly compute the time involved, the sequence of events must be reviewed.

July 5, 1983—Appellant questioned by federal Border Patrol Agents and arrested on state charges.

July 28, 1983—Appellant arrested on federal charge, then turned over to state authorities.

August 1, 1983—Pursuant to writ of habeas corpus ad prosequendum appellant appeared before U.S. magistrate, then was returned to state custody.

August 9, 1983—Indictment.

August 29, 1983—Pursuant to writ of habeas corpus ad prosequendum, appellant was arraigned, entered a plea of not guilty and again returned to state authorities.

October 13, 1983—Trial date set for November 7.

November 2, 1983—Motion to suppress evidence.

December 30, 1983—Trial commenced. Appellant convicted on all counts and motion to suppress denied.

It is evident that 143 days elapsed between August 9th, the date of the indictment, and December 30, 1983, the commencement of the trial, thus exceeding the statutory 70 day limit unless excludable time comprises the excess. Although under section 3161(h)(1)(J), a portion of the time between defendant's motion to suppress and trial is excludable, 85 days already had elapsed prior to the filing of the suppression motion. During this 85-day period there were no motions or delays attributable to the defendant. The government claims that the entire time between indictment and trial was excludable on the theory that the appellant was in continuous state custody during that period awaiting probation revocation and that this comes under the ambit of § 3161(h)(1) excluding "any period of delay resulting from other proceedings concerning the defendant, including but not limited to [certain specified proceedings]." [1]

---

1. Listed in § 3161(h)(1) (Supp.1984) as "other proceedings" are:

The determination of whether the time sequence comported with the strictures of the Speedy Trial Act thus is dependent upon whether the period that appellant spent in state custody awaiting probation revocation proceedings is excludable. Although the status of state custody in relation to the Speedy Trial Act has not been addressed by this circuit, other circuits have excluded time spent in state custody awaiting trial on state criminal charges, *United States v. Goodwin*, 612 F.2d 1103 (8th Cir.1980) (time in state custody awaiting trial on armed robbery charges excludable) *United States v. Allsup*, 573 F.2d 1141 (9th Cir.1978) (no Speedy Trial Act violation where pendency of state prosecution caused the delay).

The specific issue here has been addressed by only one circuit. In *United States v. Lopez-Espindola*, 632 F.2d 107 (9th Cir.1980) the Ninth Circuit was confronted with an almost identical situation. There, as here, a defendant was charged with making a false claim of United States citizenship. Similarly, between the dates of the federal indictment and of trial, the defendant was in state custody, at first awaiting trial on a state charge, but subsequently in connection with probation revocation proceedings. In deciding that the entire period spent in state custody was excludable under section 3161(h)(1) the court explained:

> We acknowledge that § 3161(h)(1) does not specifically mention probation revoca-

tion proceedings as an excludable period. The Congress provided by express language that "any period of delay resulting from other proceedings concerning the defendant, including but not limited to—[citing examples of such proceedings]" should be excluded in computing the time within which the trial must commence. The "including but not limited to" language makes it clear that Congress did not intend to restrict the meaning of "other proceedings" to those specifically mentioned. We find no reason why the delay resulting from the probation revocation proceeding should not be considered excludable in the same manner as other proceedings concerning the defendant, even though this particular proceeding is not specifically mentioned. There is undoubtedly a degree of discretion involved in ascertaining the nature of *those proceedings* which fall within the "other proceedings" language of the statute. We find that the exclusion of the time during which appellant was in state custody in connection with the probation revocation proceedings was well within the discretion afforded the trial judge.

*Id.* at 110 (footnote omitted).

The court expressly rejected the theory that only time consumed by actual *trial* is excludable, *see United States v. Oliver*, 523 F.2d 253 (2d Cir.1975) (Lumbard, J., concurring), and that probation revocation

(A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;

(B) delay resulting from any proceeding, including any examination of the defendant, pursuant to section 2902 of title 28, United States Code;

(C) delay resulting from deferral of prosecution pursuant to section 2902 of title 28, United States Code;

(D) delay resulting from trial with respect to other charges against the defendant;

(E) delay resulting from any interlocutory appeal;

(F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

(G) delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure;

(H) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable;

(I) delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government; and

(J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

proceedings are not qualified as "other proceedings" under section 3161(h)(1).

▮▮▮ We find the *Lopez-Espindola* reasoning persuasive and hold that in computing the 70 day limitation under the Speedy Trial Act, time spent in state custody awaiting probation revocation proceedings is excludable. Because Rodriguez-Franco was in state custody pending disposition of his probationary status for the entire period between indictment and trial on federal charges, the district judge properly determined there was no violation of the Speedy Trial Act.[2]

### III. THE MOTION TO SUPPRESS

Appellant claims that the district court erred in denying his motion to suppress the statements in which he falsely claimed to be a citizen of the United States and gave a fictitious name in response to the Border Patrol Agent's request for identification. In support of his position, appellant argues that the initial stop was not based on articulable suspicion that he was an illegal alien and that evidence gained as a result of this invalid detention violated his fourth amendment rights and should be suppressed. Appellant further contends that even if the initial stop was found to be based on articulable suspicion, the agents' subsequent act in requiring him to accompany them to the bus stop bench amounted to an arrest that was illegal for lack of probable cause.

▮▮▮ 8 U.S.C. § 1357 authorizes Immigration and Naturalization Service (INS) officers to interrogate any person "believed to be an alien as to his right to be or remain in the United States." This authority is not unbounded, but is subject to the principles of the fourth amendment as it relates to searches and seizure. Thus, the INS is forbidden from detaining persons for questioning about their citizenship on less than a reasonable suspicion that they may be aliens. *United States v. Brignoni-Ponce,* 422 U.S. 873, 884, 95 S.Ct. 2574, 2581, 45 L.Ed.2d 607 (1975). The Supreme Court has recently held, however, that a request for identification by the INS does not, by itself, amount to a detention protected by the fourth amendment "[u]nless the circumstances of the encounter [were] so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded." *INS v. Delgado,* —— U.S. ——, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984).

In *Delgado,* the INS, suspecting the employment of illegal aliens, conducted "factory surveys" at several plants in order to detect the presence of any illegal aliens. While INS agents positioned themselves at the doors, other agents circulated throughout the buildings, asked the employees several questions about their citizenship, and, in some instances, asked to see immigration papers. The agents wore badges and were armed, although no guns were drawn. During the surveys, each of which lasted one to two hours, employees continued their work and were free to move about, although there was some disruption and several employees attempted to hide. Claiming a violation of their fourth amendment rights, several employees petitioned for injunctive relief. The Ninth Circuit Court of Appeals held that the surveys constituted a "seizure" of the work force and that the questioning which occurred violated the fourth amendment unless based upon a reasonable suspicion that the particular employee questioned was an illegal alien.

---

**2.** The fact that here, unlike in *Lopez-Espindola,* appellant's appearance in federal court was three times obtained by virtue of a writ of habeas corpus ad prosequendum does not affect our disposition. Simply because the federal court, by use of such procedure, was able to procure Rodriquez' appearance for limited purposes did not mandate a federal trial within the statutory period. Such a holding not only would interfere with but disrupt the state system. As the *Lopez-Espindola* court stated:

> It is our considered judgment that it is only in exceptional cases that a federal court should exercise a discretion to interfere with criminal proceedings in the state court. Those courts have very important interests in the expeditious administration of their own criminal justice systems. It is clear that Congress recognized those interests in the Speedy Trial Act when it allowed for the exclusion of the delay resulting from such proceedings. 632 F.2d at 111 (footnote omitted).

The Supreme Court reversed. The Court held that a seizure or detention within the meaning of the fourth amendment only occurs "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *Id.* 104 S.Ct. at 1762, citing *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) and *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). In *Delgado,* although agents were stationed at the doors during the factory surveys, no employees were told they could not leave and no force or coercion was used. Thus, the Court concluded that no reasonable person would have thought his liberty was restrained and accordingly held that no detention or seizure occurred. Further, the Court held that the mere questioning of the employees by the agents amounted to nothing more than brief police-citizen encounters having no fourth amendment ramifications.

It is clear that *Delgado* controls the present case. Applying the *Delgado* holding to the facts here, we conclude that the initial questioning concerning citizenship was authorized under 8 U.S.C. § 1357 and was no more than a police-citizen encounter not involving the fourth amendment. Nor did the request that appellants accompany the agents to the nearby bench transform the encounter into a detention within the meaning of the fourth amendment. There was no force or intimidation; the men went voluntarily. Nothing occurred to cause a reasonable person to believe he could not refuse to answer and was not free to leave. Hence, we conclude that under the *Delgado* rationale, the encounter did not rise to the level of a detention subject to fourth amendment protection. The district judge correctly denied the motion to suppress.

AFFIRMED.