KLEES, Judge.
On October 13, 1987, the defendant was charged with possession with intent to distribute marijuana. He was arraigned on October 15th and pled not guilty. On January 15, 1988, his motion to suppress the evidence was granted by the trial court. The State filed an application for writs from this judgment, but because it failed to include in its application the transcript of the suppression hearing, this court did not consider the application. The State’s application for rehearing was denied on March 21st. The State then sought writs of review and prohibition in the Louisiana Supreme Court, and on April 29th that Court granted writs and transferred the application, (which included the transcript of the suppression hearing) back to this court for consideration, 523 So.2d 1316.
FACTS:
On the afternoon of September 13, 1987, United States Border Patrol Agent King was patrolling the Union Passenger Terminal in New Orleans, looking for illegal aliens. Agent King testified that he first *119 noticed the defendant Moss Nebar because Nebar appeared to be a foreign national due to his style of dress and his “ethnic appearance”. Agent King observed Nebar glance in his direction several times and then look away quickly. Agent King then approached him and, without identifying himself as an officer, asked Nebar if he was travelling by bus. Whe Nebar answered that he was, Agent King noticed that he had a thick foreign accent.
At that point, Agent King identified himself as an immigration officer and asked Nebar his immigration status. After informing Agent King that he was from India, Nebar told King that he had left his immigration papers at his home in New York. Agent King testified that because all aliens are required to carry their papers with them at all times, he indicated that Nebar should accompany him to the Amtrak security office in the terminal to investigate his claim that he was a legal alien.
Agent King testified that on the way to the office, Nebar appeared extremely nervous, more so than a “normal” illegal alien would have acted. Once inside the office, Agent King conducted a pat down search of Nebar for weapons but found none. He then asked Nebar if he was carrying anything, and Nebar began trembling violently as he emptied his pockets. Agent King took a nylon gym bag from Nebar, opened it to search for weapons, and found inside it twelve pounds of marijuana. Nebar was formally placed under arrest and was advised of his Miranda rights. Nebar later gave a statement in which he admitted being in the country illegally. He also told of how he obtained the marijuana and where he was supposed to deliver it. Ne-bar later gave another statement to N.O. P.D. officers in which he related that he was really an illegal alien from Jamaica.
The State first argues that the stop and questioning of the defendant was not a “detention” which triggered the defendant’s Fourth Amendment rights.
The authorization for a temporary stop by police of a person in a public place is set forth in C.Cr.P. art. 215.1, which provides in part:
A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
In order to stop a person temporarily to facilitate an investigation, the officer must have a reasonable suspicion that the suspect has committed, is committing, or is about to commit a crime. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Jones, 483 So.2d 1207 (La. App. 4th Cir.1986), writ den. 488 So.2d 197 (La.1986). “Reasonable suspicion” is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s rights. State v. Belton, 441 So.2d 1195 (La.1983), cert. den. Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Jones, supra. Mere suspicion of activity is not a sufficient basis for police interference with an individual’s freedom. State v. Williams, 421 So.2d 874 (La.1982). A citizen’s liberty and privacy is not violated simply because a police officer attempts to converse with him as long as that individual is free to disregard the questioning and walk away. U.S. v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); State v. Lanter, 391 So.2d 1152 (La.1980); State v. Duplessis, 391 So.2d 1116 (La.1980). Only when the individual is actually stopped without reasonable cause or when the stop without reasonable cause is imminent is the “right to be left alone” violated, thereby resulting in the illegal seizure of any abandoned property. (Opinion at 119)
Here, Agent King’s initial approach and questioning of Nebar, where King did not identify himself as an officer and merely asked Nebar if he was travelling by bus, does not appear to have been a “detention” which would have triggered Nebar’s Fourth Amendment rights because Nebar would not have had any reason to suspect that Agent King was a police officer. As *120 such, Nebar could have merely walked away from King. However, once King identified himself as an immigration officer and asked Nebar his citizenship, it appears that Nebar would have been justified in believing that he could not simply ignore King and walk away.
The statute pursuant to which Agent King asked Nebar about his citizenship is 8 U.S.C. § 1357(a)(1), which provides that “[a]ny officer or employee of the [Immigration and Naturalization] Service authorized under regulations prescribed by the Attorney General shall have power without warrant (1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States.” Both the State’s application and the trial court’s opinion refer to U.S. v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), where the Court considered the stop of cars near the Mexican border pursuant to § 1357(a)(3),[1] another section of the statute. This stop was based only upon the fact that the occupants looked like Mexicans. The Court held that agents making these type of detentions would have to have reasonable suspicion that the cars contained illegal aliens. The Court noted: “For the same reasons that the Fourth Amendment forbids stopping vehicles at random to inquire if they are carrying aliens who are illegally in the country, it also forbids stopping or detaining persons for questioning about their citizenship on less than a reasonable suspicion that they may be aliens.” Id. at 884, 95 S.Ct. at 2581-2582. However, in a footnote, the Court “reserved the question whether Border Patrol officers also may stop persons reasonably believed to be aliens when there is no reason to believe they are illegally in the country.” Id. at 885, n. 9, 95 S.Ct. at 2582.
In U.S. v. Rodriguez-Franco, 749 F.2d 1555 (11th Cir.1985), the court held that “the initial questioning by a border agent concerning an alien’s citizenship was merely a “police-citizen” encounter not involving the fourth amendment.” Id. at 1560. In Rodriguez-Franco, agents were patrolling a shopping mall in Miami when they noticed a group of three Hispanic-looking people who were walking around looking at other people. Upon seeing the approach of the plain-clothed agents, the group split up. The agents stopped the defendant and asked him about his citizenship, asking him to relocate to a nearby bench. The Ninth Circuit held that the agents’ questioning and the relocation to the bench was not a “detention” which triggered the Fourth Amendment. In support of its opinion, the Rodriguez-Franco court cited I.N.S. v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984), wherein I.N.S. agents conducted a “work survey” at two factories, stationing themselves at the doorways and asking workers their citizenship. The Court held that such activity did not involve a “detention” which would trigger Fourth Amendment rights.
In Benitez-Mendez v. I.N.S., 760 F.2d 907 (9th Cir.1983), the defendant was working in a field with a group of aliens when I.N.S. agents pulled up in a car. The other workers fled, but the defendant remained behind and was questioned as to his citizenship. When he replied that his papers were in his car parked nearby, the agents placed him in the back of their car while they retrieved the papers. The defendant was later found to be an illegal alien. The Ninth Circuit held that while the initial encounter in the field between the agents and the defendant was not a “seizure” which triggered the Fourth Amendment, the placing of the defendant in the back of the agents’ car was a detention for which the agents needed reasonable suspicion of *121 criminal activity, which was lacking in this case.[2]
Thus, it appears that Agent King did not need even reasonable suspicion that Nebar was an illegal alien in order to question him as to his citizenship. However, once he asked Nebar to accompany him to the Amtrak security office, Agent King needed at least reasonable suspicion that Nebar had committed a crime. Agent King testified that by that time, Nebar had voluntarily told him that he had left his immigration papers at home in New York. Because aliens are required to carry these papers at all times, Nebar had just confessed to a crime. Thus, Agent King had not only reasonable suspicion that Nebar had committed a crime, but also probable cause to arrest him for this crime. As such, Agent King was authorized to order Nebar to accompany him to the security office.
Once in the office, Agent King conducted a pat-down search of Nebar for weapons and then searched the gym bag he was carrying and found the marijuana. Although the search of the gym bag did seem to exceed the scope of a pat-down search, the search could be considered a search incident to the arrest of Nebar for failing to carry his immigration papers. “A search performed incident to a lawful arrest has long been recognized as an exception to the warrant requirement.” State v. Wilson, 467 So.2d 503, 517 (La.1985), cert. den. Wilson v. Louisiana, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). However, in order for such search to be valid, the State must prove that probable cause existed for the defendant’s arrest. State v. Wilson, supra. “Probable cause to arrest exists when the facts and circumstances known to the officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing the person to be arrested has committed a crime.” State v. Wilson, at 515; State v. Ruffin, 448 So.2d 1274, 1277 (La. 1984). Such search is limited to “the area within the defendant’s control, that is, an area from which he can gain possession of weapons or act to destroy evidence.” State v. Smith, 477 So.2d 893, 896 (La.App. 4th Cir.1985).
In its reasons for judgment, the trial court noted that the search of the bag was illegal because Nebar had not yet been arrested. However, as the Louisiana Supreme Court noted in State v. Raheem, 464 So.2d 293 (La.1985): “An arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an oficer tells an accused he is under arrest.” Id. at 296; State v. Junegain, 478 So.2d 542 (La.App. 4th Cir.1985), writ den. 483 So.2d 1018 (La.1986). Here, Agent King already knew that Nebar had committed a crime by failing to carry his immigration papers. Nebar was escorted to the security office and was subjected to a pat-down search. As such, it appears that at that point Agent King had “effected an extended restraint on Nebar,” and in effect he was under arrest for the violation of immigration laws prior to the point at which the marijuana was discovered, even though Agent King had not officially informed him he was under arrest. Thus, the marijuana was legally seized pursuant to a search incident to Nebar’s arrest for the violation of the immigration laws.
In its reasons for judgment, the trial court also cited Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), wherein police officers stopped the defendant at an airport because he fit a “drug courier” profile. The. officers asked to see the defendant’s driver’s license and his airline ticket, and then seized them, escorted him to a separate room, and retrieved his luggage from the baggage area without his consent. The officers obtained the key to one bag, opened it, found drugs, and then *122 forced open the other suitcase which also contained drugs. The Court found that at the point the defendant was escorted to the other room with his driver’s license and ticket still in the officer’s possession, he was in effect under arrest, and the officers did not have probable cause to arrest him at that time. The Court noted: “These circumstances surely amount to a show of official authority such that ‘a reasonable person would have believed that he was not free to leave.’ ” Id. at 502, 103 S.Ct. at 1326.
The trial court also mentions that the stop of Nebar was not within one hundred miles of the border, citing Brignoni-Ponce, supra. However, the reference of the Court in that case to the one-hundred-mile limit pertains to subsection (a)(3) of the statute, not subsection (a)(1) which was employed in the arrest of Nebar.
We conclude that the trial court erred by granting the motion to suppress the marijuana.
Accordingly, we reverse the trial court’s ruling of January 15,1988 on the motion to suppress evidence, and remand this matter to the trial court for further proceedings.
REVERSED AND REMANDED

. Subpart (a)(3) provides:
(a) Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant—
******
(3) within a reasonable distance from any external boundary of the United States, to board and search for aliens any vessel within the territorial waters of the United States and any railway car, aircraft, conveyance, or vehicle, and within a distance of twenty-five miles from any such external boundary to have access to private lands, but not dwellings, for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States; and

. See also Illinois Migrant Council v. Pilliod, 548 F.2d 715 (7th Cir.1977); Cheung Tin Wong v. U.S.I.N.S., 468 F.2d 1123 (D.C.Cir.1972); and Au Yi Lau v. U.S.I.N.S., 445 F.2d 217 (D.C.Cir.1971), cert. den. 404 U.S. 864, 92 S.Ct. 64, 30 L.Ed.2d 108 (1971), which held that although an agent may question persons about their citizenship, the agent must have reasonable suspicion that they are illegal aliens in order to detain them by force or by intimidation.