**Eleuterio BENITEZ-MENDEZ, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 82–7096.**

United States Court of Appeals, Ninth Circuit.

Argued Jan. 3, 1983.

Submitted May 4, 1983.

Decided June 10, 1983.

Rehearing Granted and Opinion Amended Nov. 28, 1984.

Richard Evans, Dept. of Justice, Washington, D.C., for respondent.

Paul D. Edmondson, Yakima, Wash., for petitioner.

Before BROWNING, Chief Judge, FLETCHER and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

Petitioner Benitez-Mendez seeks review of a decision of an immigration judge, affirmed by the Board of Immigration Appeals, finding petitioner deportable under 8 U.S.C. § 1251(a)(2) for entry without inspection. This court has jurisdiction under 8 U.S.C. § 1105a(a).

Petitioner was arrested by Border Patrol officers on April 13, 1981, while he was standing in a hop field near Granger, Washington. He had been working the field with a group of workers who fled when three marked Border Patrol vehicles approached the field. Petitioner did not run but remained standing in the field. A Border Patrol officer approached and questioned petitioner, who told the officer that he had papers in his car which showed his legal alien status. Petitioner was then detained in a Border Patrol vehicle while the officers examined his papers.

After the officers determined that the papers did not establish that petitioner was legally in the country, petitioner was arrested and taken to the Border Patrol office. At the office, he told the arresting officer that he was born in Mexico and that he had entered the United States near San Ysidro without an immigration inspection. The arresting officer wrote this information on a Form I–213 (Record of Deportable Alien). At his deportation hearing on May 21, 1981, petitioner denied the allegations in the Order to Show Cause, denied deportability, and unsuccessfully moved to suppress the information contained on the Form I–213.

Petitioner contends that he was unlawfully seized within the meaning of the Fourth Amendment, and that, therefore, the information obtained by the Border Patrol and used at the deportation hearing should have been excluded as the "fruit of an unlawful seizure."

This court's test to determine whether the factual circumstances of law enforcement activity rise to the level of a seizure under the Fourth Amendment is found in

*United States v. Anderson,* 663 F.2d 934 (9th Cir.1981):

> "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."

*Id.* at 939 (*quoting United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.). When the stop in question rises to the level of a "seizure" under the Fourth Amendment, we have formulated a constitutional standard applicable to detentive questioning of suspected illegal alien workers. *ILGWU v. Sureck,* 681 F.2d 624, 638 (9th Cir.1982), *rev'd on other grounds sub nom. INS v. Delgado,* — U.S. —, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). In *ILGWU v. Sureck,* we held that

> INS investigators may not seize or detain workers for citizenship status questioning unless the investigators are able to articulate objective facts providing investigators with a reasonable suspicion that each questioned person, so detained, is an alien illegally in this country.

681 F.2d at 638.[1] These two standards are applicable to the seizure of petitioner Benitez-Mendez.

■ From the record, it does not appear that the Border Patrol officer's initial encounter with petitioner amounted to a seizure under the *Anderson* test. The officer approached petitioner in an open field and asked him several questions to which he responded voluntarily. There is no evidence of the use of physical force, a display of a weapon, or the threatening presence of several officers.

■ However, following the initial questioning during which petitioner stated that he had immigration documents in his car, the Border Patrol officer took petitioner to the Border Patrol vehicle and put him inside to wait until other officers could check his papers. We find that the placing of petitioner in the Border Patrol vehicle was a seizure under the *Anderson* test. Border Patrol Agent Minyard testified that he directed a second Border Patrol officer, Agent Stinsley, to keep petitioner in the Border Patrol vehicle until his papers could be examined. Once petitioner was placed inside the vehicle and told to wait, it is clear that he reasonably "would have believed that he was not free to leave." *Anderson,* 663 F.2d at 939.

■ Having determined that the detention of petitioner in the vehicle was a seizure, we find that the Border Patrol officer was not able to articulate objective facts providing a reasonable suspicion that Benitez-Mendez was an alien illegally in this country. *ILGWU v. Sureck,* 681 F.2d at 638. The objective facts known to the officers at the time of petitioner's detention were that petitioner was a field worker whose co-workers had fled upon sight of a marked Border Patrol detail, that he was an alien, and that he claimed to possess documents showing his legal status. Agent Minyard, who ordered petitioner de-

---

1. Because the Supreme Court held that no seizure had occurred in *Delgado* (*Sureck* below), it did not review our formulation of the constitutional standard applicable when a seizure has in fact occurred. *See* 104 S.Ct. at 1764.

The facts of the instant case, distinguishable from those in *Delgado,* establish the INS agents' conduct did constitute a seizure. In *Delgado,* "the INS agents' conduct ... consisted simply of questioning employees and arresting those they had probable cause to believe were unlawfully present in the factory." *Id.* Here, in addition to questioning Benitez-Mendez about his immigration status, the Border Patrol officer placed him in a Border Patrol vehicle before the officer had reasonable suspicion, let alone probable cause, to believe that Benitez-Mendez was illegally in the country. Such conduct amounts to a seizure under *Anderson* and warrants application of the *Sureck* "articulable facts/reasonable suspicion" test.

tained in the vehicle, did so over the radio solely upon the information conveyed by Agent Stinsley that "he had a person there who claimed to be legal status; however, his papers was (sic) in his vehicle." [2]

In sum, the Fourth Amendment standard articulated in *ILGWU v. Sureck* has not been met in this case. At the time that Agent Minyard ordered Agent Stinsley to seize and detain petitioner, neither officer had sufficient grounds to suspect that petitioner was an alien illegally in this country.

■ We granted rehearing in light of the Supreme Court's decision in *INS v. Lopez-Mendoza,* — U.S. ——, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), that the exclusionary rule does not apply in civil deportation proceedings. Accordingly, even though we have found that petitioner's arrest violated the Fourth Amendment, the information obtained as the result of the arrest (petitioner's statements on Form I–213) was admissible at his deportation hearing.

On the basis of this evidence, we affirm the immigration judge's order of deportation. To enable petitioner to seek any available alternative forms of relief and to move for a stay of deportation, our mandate shall issue forty-five days from the date of entry of this judgment. We also reinstate the immigration judge's grant of 30 days voluntary departure time, to commence on the effective date of any order of deportation issued against petitioner.

---

**2.** Petitioner had not yet violated 8 U.S.C. § 1304(e), requiring an alien to "at all times carry with him and have in his personal possession any certificate of alien registration or alien registration receipt card issued to him...." Since petitioner stated that his papers were in his car, parked adjacent to the field, the officers should have afforded him the opportunity to produce the papers. Under the circumstances the papers were constructively in petitioner's personal possession. It was reasonable for petitioner to leave the papers in his car while he engaged in heavy agricultural labor. Only if the petitioner refused to produce the papers, or was unable to produce the valid papers, would he have committed a misdemeanor under § 1304(e), giving the INS officers probable cause to arrest him.