Victor
ARGUELLES–VASQUEZ, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 84–7697.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 2, 1985.

Decided April 15, 1986.

Carlos Vellanoweth, Los Angeles, Cal.,
for petitioner.

1. 8 U.S.C. § 1251(a)(2) requires all aliens to present themselves for inspection and lawful

Evelyn Matteucci, Asst. U.S. Atty., Los
Angeles, Cal., for respondent.

Before FLETCHER, PREGERSON, and
CANBY, Circuit Judges.

PREGERSON, Circuit Judge:

Petitioner Victor Arguelles-Vasquez
seeks review of an order of the Board of
Immigration Appeals (BIA) dismissing an
appeal from an Immigration Judge's deci-
sion that petitioner was deportable under 8
U.S.C. § 1251(a)(2) for entry into the Unit-
ed States without inspection.[1]  We have
jurisdiction under 8 U.S.C. § 1105a(a).  We
reverse and remand.

BACKGROUND

On April 21, 1982, Arguelles-Vasquez,
while driving his automobile near Camaril-
lo, California, a city north of Los Angeles,
was stopped by a Border Patrol officer.
At that time, Arguelles-Vasquez was trav-
eling from his place of employment to his
home.  The officer questioned Arguelles-
Vasquez concerning his presence in the
United States.  Arguelles-Vasquez handed
the officer a Notice of Approval of Second
Preference Visa Petition.  While the officer
examined the document, Arguelles-Vasquez
was detained in a Border Patrol vehicle.

The officer determined that the doc-
ument did not establish that Arguelles-Vas-
quez was legally in the country.  The offi-
cer then arrested Arguelles-Vasquez and
took him to a Border Patrol office.  During
questioning at the office, Arguelles-Vas-
quez stated that he was a citizen of Mexico
and that he had entered the United States
near San Ysidro in December 1979 without
an immigration inspection.  The interrogat-
ing officer wrote the information on a
Form I–213 (Record of Deportable Alien).
The Immigration and Naturalization Ser-
vice subsequently issued an order to Arg-
uelles-Vasquez requiring him to show
cause why he should not be deported for
entry into the United States without inspec-
tion in violation of 8 U.S.C. § 1251(a)(2).

admittance to an officer of the United States Immigration and Naturalization Service.

Arguelles-Vasquez denied the allegations in the order to show cause and, at his deportation hearing on May 7, 1982, moved to suppress the information recorded on the Form I–213 as the fruit of an unlawful seizure. Arguelles-Vasquez contended that the seizure was unlawful because it was based solely on his Hispanic appearance. Arguelles-Vasquez also asked the Immigration Judge to call the arresting Border Patrol officer for cross-examination so that he would have an opportunity to prove that the officer's decision to stop him was based on no articulable facts other than his Hispanic appearance. The Immigration Judge denied the request to cross-examine the officer, denied the motion to suppress, and determined that the information recorded on the Form I–213 established Arguelles-Vasquez's deportability. The BIA affirmed.

In dismissing the appeal from the Immigration Judge's decision, the BIA assumed, without deciding, that Arguelles-Vasquez was unlawfully arrested, but nonetheless held that he failed to establish an egregious violation of his constitutional rights. The BIA therefore concluded that under *INS v. Lopez-Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), the exclusionary rule does not bar the admission in Arguelles-Vasquez's civil deportation proceedings of evidence obtained as a result of an unlawful seizure.

Arguelles-Vasquez disputes the BIA's conclusion and contends that his seizure, based solely on his Hispanic appearance, was an egregious violation of his fourth amendment rights, and that the egregious violation exception mentioned in *Lopez-Mendoza*, 104 S.Ct. at 3490, requires suppression of evidence obtained from him.

Arguelles-Vasquez further contends that the Immigration Judge, by refusing to call the arresting Border Patrol officer for cross-examination, improperly denied him an opportunity to establish that his seizure was the result of unlawful and egregious governmental conduct.

ANALYSIS

The overriding issue before us is whether, consistent with *Lopez-Mendoza*, an illegal seizure of a person based solely on Hispanic appearance is an egregious fourth amendment violation requiring suppression of evidence obtained as fruits of the unlawful seizure. We review this question of law *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, ―― U.S. ――, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

In *Lopez-Mendoza*, the Supreme Court held that as a general principle, the exclusionary rule does not bar the admission in civil deportation proceedings of evidence obtained as a result of an unlawful seizure. 104 S.Ct. at 3491. The Court, however, expressly left open the question whether exclusion of evidence might be appropriate if the evidence were obtained by "egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained."[2]  *Id.* at 3490.

---

2. In *Adamson v. Commissioner*, 745 F.2d 541, 545 (9th Cir.1984), we implicitly rejected the notion that for the exclusionary rule to apply the challenged conduct must undermine the probative value of the illegally obtained evidence. The approach we took in *Adamson* is correct because requiring that the probative value of the illegally obtained evidence be undermined for the exclusionary rule to apply would render admissible evidence obtained by even the most egregious means. For example, in *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), officers directed a doctor to induce Rochin to vomit in order to extract drug capsules from his stomach. The capsules, once extracted from Rochin's stomach, were highly probative evidence of his possession of contra-

band. *Id.* at 166, 72 S.Ct. at 206. Yet this is the very case the Supreme Court cited as support for the proposition that evidence obtained by an egregious violation of individual liberties may be excluded from civil proceedings. *Lopez-Mendoza*, 104 S.Ct. at 3490–91.

Further, a requirement of undermined probative value is inconsistent with the purpose of the exclusionary rule to deter official misconduct. If, in cases of bad faith violations of fourth amendment rights, courts exclude only illegally obtained evidence whose probative value is somehow undermined, then application of the rule would be narrowly limited and its deterrent effect on serious official misconduct would be hobbled.

In elaborating on the concept of egregious violation, the Court in *Lopez-Mendoza* cited *Matter of Toro*, 17 I. & N.Dec. 340 (BIA 1980), for the proposition that the BIA would exclude illegally obtained evidence if the use of such evidence would be "'fundamentally unfair' and in violation of due process requirements of the fifth amendment." 104 S.Ct. at 3490 n. 5

The facts in *Toro* are close to those in the instant case. In *Toro*, the alien argued at her deportation hearing and on appeal that because INS agents stopped and questioned her solely because of her Latin appearance in violation of her fourth amendment rights, the evidence obtained from the stop should be suppressed. 17 I. & N.Dec. at 341. As in the instant case, Toro requested that the Immigration Judge call the arresting officer as a witness so that she might prove the illegality of her arrest. *Id.* The Immigration Judge denied Toro's request to call the officer as a witness, denied her motion to suppress, and found her deportable. *Id.* at 342.

The BIA recognized in *Toro* that "cases may arise in which the manner of seizing evidence is so egregious that to rely on it would offend the fifth amendment's due process requirement of fundamental fairness." *Id.* at 343. The BIA, however, found that admitting the evidence from the stop was not fundamentally unfair under the circumstances because Toro's stop took place almost one year *before* the Supreme Court held in *United States v. Brignoni-Ponce*, 422 U.S. 873, 886–87, 95 S.Ct. 2574, 2582–83, 45 L.Ed.2d 607 (1975), that stops based solely on Latin appearance violated the fourth amendment. 17 I. & N.Dec. at 343–344. The BIA reasoned that the stop was not egregious because the investigating officers were acting in accordance with

then-existing INS policy that had not yet been found unconstitutional.[3] *Id.* at 344.

Like Toro, Arguelles-Vasquez contends that the Border Patrol stopped him solely because of his Hispanic appearance. Unlike the situation in *Toro*, however, if the Border Patrol's seizure of Arguelles-Vasquez was based solely on his Hispanic appearance then it would have been made in bad faith, because no reasonably competent Border Patrol officer would have believed that such seizure when made was legal.

In 1975, almost seven years before Arguelles-Vasquez's seizure and detention, the Supreme Court held that, except at the border or its functional equivalents, the fourth amendment requires that before roving Border Patrol officers stop a vehicle, they must be able to point to "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" that the vehicle they stop contains aliens who may be illegally in the country. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975). The Court emphasized that Hispanic appearance alone is insufficient to justify a stop. *Id.* at 886–87, 95 S.Ct. at 2582–83. Moreover, in *Nicacio v. INS*, 768 F.2d 1133, 1137 (9th Cir.1985), we declared that "Hispanic-looking appearance and presence in an area where illegal aliens frequently travel are not enough to justify a stop to interrogate the occupants of a vehicle."

An officer who detains an individual based solely on Hispanic appearance in order to inquire about the legality of the individual's presence in this country flouts the well-established pronouncement of *Brignoni-Ponce* that Hispanic appearance alone is insufficient to justify a stop. Under *Lopez-Mendoza* and *Toro*, such official conduct constitutes an egregious violation of the fourth amendment requiring suppression of any evidence obtained through the stop.[4]

---

3. Our recent opinion in *Adamson v. Commissioner*, 745 F.2d 541 (9th Cir.1984), is consistent with the BIA's decision in *Toro*. In *Adamson* we applied *Lopez-Mendoza's* concept of egregious violation. 745 F.2d at 545–46. We recognized there that a police officer's bad faith violation of an individual's fourth amendment rights would be an egregious violation, warranting exclusion of evidence in civil proceedings. *Id.* at

546. Although we found no bad faith in *Adamson*, we indicated that bad faith would be found if a reasonably competent officer would have believed that the search was illegal. *Id.*

4. This court's decision in *Benitez-Mendez v. INS*, 760 F.2d 907 (9th Cir.1985) (modifying 748 F.2d 539 (9th Cir.1984), modifying 707 F.2d 1107 (9th Cir.1983)), does not require a different result.

Because we hold that a stop based solely on Hispanic appearance is an egregious fourth amendment violation, it follows that the Immigration Judge erred by refusing to permit Arguelles-Vasquez to cross-examine the arresting Border Patrol officer in support of his unlawful seizure claim. *See* 8 U.S.C. § 1252(b)(3) (alien charged with deportability "shall have a reasonable opportunity ... to present evidence in his own behalf"). Therefore, we grant the petition for review and remand to the BIA with instructions to remand to the Immigration Judge to permit Arguelles-Vasquez to cross-examine the Border Patrol officer in support of his unlawful seizure claim.[5]

The petition for review is granted and the matter is remanded to the BIA for further proceedings consistent with this opinion.

CANBY, Circuit Judge, dissenting:

With all due respect, I believe that *INS v. Lopez-Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), precludes the result reached by the majority in this case. *Lopez-Mendoza*, after an extensive cost-benefit analysis, held that the courts were not to impose an exclusionary rule upon deportation proceedings. The factors relied upon by the Supreme Court, including the attenuated deterrence value of the rule, its effect of sanctioning a continuing violation of the law, the need for simplicity in deportation proceedings, and the magnitude of the enforcement problem, are all present in this case. I therefore find *Lopez-Mendoza* controlling.

It is true that the Court in *Lopez-Mendoza* stated that it was not dealing with "egregious violations of the Fourth Amendment ... that might transgress notions of fundamental fairness and undermine the probative value of the evidence." 104 S.Ct. at 3490. But the Court there had before it a case in which an INS officer without a warrant brushed by an objecting shop owner and interviewed and arrested an employee in the shop. That officer should have known that he was violating the Fourth Amendment, but the evidence he obtained was not excluded. In our case, an officer allegedly stopped petitioner because of his Hispanic appearance which, while insufficient of itself to support a stop, may be a "relevant factor" along with other evidence. *United States v. Brignoni-Ponce*, 422 U.S. 873, 887, 95 S.Ct. 2574, 2583, 45 L.Ed.2d 607 (1975). The comparison is such that I have difficulty concluding that *Lopez-Mendoza* created an "egregious violation" exception that encompasses our case. Nor do I read the Supreme Court's footnote reference to *Matter of Toro*, 17 I. & N.Dec. 340, 343 (BIA 1980), as authorizing us to impose an exclusionary rule; the reference merely observes that the BIA itself will exclude evidence in appropriate cases. *Lopez-Mendoza*, 104 S.Ct. at 3490 n. 5.

I concede that dictum in *Adamson v. Commissioner*, 745 F.2d 541, 545–46 (9th Cir.1984), supports the majority here. But our decisions in *Benitez-Mendez v. INS*, 760 F.2d 907 (9th Cir.1985) (amended opinion), and *Garrett v. Lehman*, 751 F.2d 997 (9th Cir.1985), applied the *Lopez-Mendoza* rationale and rejected application of the exclusionary rule in, respectively, a deportation proceeding and a military administrative proceeding.

I am most sympathetic with the majority's goal of deterring the INS from stopping persons solely because of their Hispanic appearance. Indeed, our court has upheld injunctive relief aimed at that very abuse, noting that such alternative methods of control were encouraged by the Supreme Court when it rejected the application of the exclusionary rule in *Lopez-Mendoza*. *Nicacio v. INS*, 768 F.2d 1133, 1140 (9th Cir.1985). In my view, *Nicacio*, rather than the majority's opinion today,

---

*Benitez-Mendez* did not argue that his arrest constituted an egregious violation of his constitutional liberties.

5. In light of our decision on the unlawful seizure issue, we need not reach Arguelles-Vasquez's contentions that the Form I–213 should have been suppressed because the statements recorded on the Form were involuntarily rendered and because the Form was not properly authenticated.

represents the path we are free to follow after *Lopez-Mendoza*. I therefore dissent.