**Russel K. WILLIAMS, et ux.,
Petitioners-Appellees,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE,
Respondent-Appellant.**

No. 84–4186.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 3, 1986.

Decided July 24, 1986.

---

Robert J. Crotty, Spokane, Wash., for petitioners-appellees.

Donald A. Couvillon, Washington, D.C., for respondent-appellant.

Before   WRIGHT,   SNEED,   and SCHROEDER, Circuit Judges.

SNEED, Circuit Judge:

The Immigration and Naturalization Service (INS) appeals from the district court's grant of a writ of habeas corpus reinstating the privilege of voluntary departure for the Williams's. We reverse.

## I.

### FACTS

On September 19, 1974, Mr. and Mrs. Williams (hereafter referred to in the singular) entered the United States from Canada with a nonimmigrant visa. On April 14, 1981, because Williams had not complied with the terms of his visa, he conceded deportability before an immigration judge in Deportation Proceedings. He was granted three months voluntary departure. On December 2, 1981, the Board of Immigration Appeals (BIA) affirmed. On February 26, 1982, the period for voluntary departure expired, but Williams did not leave the country. On April 22, 1982, Williams secured a five-day temporary restraining order from a federal district judge in the Eastern District of Washington, preventing the INS from arresting him, and enabling him to file a petition for review with the Ninth Circuit and thus to avoid deportation. On April 27, 1982, Williams filed a petition for review by the Ninth Circuit of the BIA's affirmance of the Deportation Proceedings.

On October 7, 1982, Williams filed with the BIA a motion to reopen for suspension of deportation (Motion to Reopen # 1). The BIA denied that motion on December 17, 1982, and Williams appealed to the Ninth Circuit on February 16, 1983. On February 28, 1984, the Ninth Circuit affirmed, 730 F.2d 769, by memorandum disposition, the BIA's decisions on the Deportation Proceedings and on Motion to Reopen # 1.

Meanwhile, in October of 1982, Williams had applied to the Department of Labor for a labor certification. The Department of Labor issued such a certification on April 12, 1984, with a priority date of October 5, 1982. The May 1984 State Department bulletin established that Williams' priority date qualified him for the immediate issuance of an immigrant visa. At this point, Williams resembled Tantalus. To receive the immigrant visa he was required to leave the country and return to Canada, his country of origin; but his leaving the country under the recently affirmed order of deportation would have destroyed his right to obtain the immigrant visa, because such visas cannot be issued to persons who have been deported within the preceding five years.

Anticipating this frustrating development, on April 2, 1984, Williams filed a second motion to reopen his deportation proceedings to obtain reinstatement of the privilege of voluntary departure (Motion to Reopen # 2). This reinstatement would have extricated Williams. If he received voluntary departure, he could leave this country, receive his immigrant visa in Canada, and return directly to this country. But this avenue of escape was threatened by closure. On May 2, 1984, on the basis of the Ninth Circuit's affirmance of the BIA's decisions on the Deportation Proceedings and Motion to Reopen # 1, the INS issued a notice to report for deportation on May 10. On May 7, the District Director stayed these notices until June 21 so as to allow Williams' children to complete the school year. And on May 24, the BIA further clogged Williams' escape route by denying Motion to Reopen # 2. The BIA based its denial on defects in the petition, as well as on its own underlying discretion. At this point, Williams appeared trapped. He had no pending challenge to the notice to report for deportation on June 21, 1984. The INS, as if to lower the fruit for which Tantalus yearned, on June 13 approved the immigrant visa. Being scheduled for deportation shortly, Williams knew

that if deported he would never get the visa.

One more route was possibly open. On June 19, Williams filed a petition for a writ of habeas corpus in the federal district court for the Eastern District of Washington. It worked. Williams broke free. That court granted the writ, reversing the BIA's denial of Motion to Reopen # 2 and giving Williams the privilege of voluntary departure. Williams and his family returned to Canada, received the immigrant visa, and are now residing in this county as permanent resident aliens. Frustration now besets the INS. It can only appeal to us and does so with some spirit. The appeal, as the INS stoutly insists, raises some difficult jurisdictional issues that we must address before any consideration of the merits.

## II.

## MOOTNESS

■ Although Williams did not raise the argument in his brief and the INS rejects it, we must consider initially whether this case has become moot. *See Canez v. Guerrero*, 707 F.2d 443, 446 (9th Cir.1983). Because Williams has reentered this country as a permanent resident alien, it is not clear that the INS will have any remedy against him even if we should reverse the writ of habeas corpus entered by the district court. Because Williams did not contend that the case is moot, the government's brief does not detail the steps the

government intends to take against Williams if it prevails on this appeal. At oral argument, however, the government firmly indicated its intention to attempt to deport Williams while he, belatedly, asserted mootness.

In deciding this question, we start with the basic question "whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties." 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3533, at 212 (2d ed. 1984). We also are mindful that the "burden of demonstrating mootness 'is a heavy one.'" *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)).

For several reasons, we do not accept Williams' assertion of mootness made at oral argument. First of all, the government's continuing desire to deport Williams makes this controversy real for both parties. An order affirming the district court's order of habeas corpus would put an end to the government's efforts; an order reversing the writ would open the way for further government action. We need not know what that action might be,[1] nor need we evaluate the likelihood that the government will succeed in deporting Williams to recognize that he still has a stake in this appeal.[2]

---

1. The government suggests it might institute deportation proceedings under Immigration and Nationality Act § 241(a)(1), 8 U.S.C. § 1251(a)(1), on the ground that Williams was excludable at the time he entered this country under Immigration and Nationality Act § 212(a)(17), 8 U.S.C. § 1182(a)(17) (providing that aliens who have been deported are excludable for five years subsequent to their deportation); *see* 8 C.F.R. § 243.5 (1985) (defining "self-deportation" to include aliens who depart "while an order of deportation is outstanding"). We need not decide whether the INS can actually deport Williams under this provision; this is just one example of possible government action attendant upon a reversal of the district court's writ of habeas corpus.

2. *Cf. Powell v. McCormack*, 395 U.S. 486, 500, 89 S.Ct. 1944, 1953, 23 L.Ed.2d 491 (1969) ("The short answer to this argument is that it confuses mootness with whether Powell has established a right to recover ..., a question which it is inappropriate to treat at this stage of the litigation."); *Chadha v. INS*, 634 F.2d 408, 417 n. 6 (9th Cir.1980) (noting that the Attorney General's declared intention to deport Chadha prevented the case from becoming moot, even though it was likely that Chadha could evade deportation), *rev'd on other grounds*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983); *British Caledonian Airways v. Bond*, 665 F.2d 1153, 1158 n. 2 (D.C.Cir.1981) (evaluating propriety of FAA action, although injunctive relief had become impossible, because of possibility of monetary relief in later action); *Mahavongsanan v.*

■ Our conclusion is bolstered, although not controlled, by our statements that a continuing dispute as to jurisdiction is sufficient to prevent a finding of mootness. *See Brown v. Board of Bar Examiners,* 623 F.2d 605, 608–09 (9th Cir.1980); *United States ex rel. Cobell v. Cobell,* 503 F.2d 790, 794 (9th Cir.1974) (noting that "there is a public interest in having the issue now before the court resolved" because "it also ·directly involves the vital jurisdictional harmony of two sovereign entities"), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975); *cf. United States v. Trans-Missouri Freight Association,* 166 U.S. 290, 309–10, 17 S.Ct. 540, 546–47, 41 L.Ed. 1007 (1897) (relying on the government's interest in determining the legality of an agreement though the defendants voluntarily dissolved the association).

For these reasons, we do not believe the case is moot. Accordingly, we proceed to discuss the district court's jurisdiction.

## III.

## JURISDICTION

The jurisdictional provisions of the Immigration and Nationality Act are not models of clarity. Resolution of the question presented by this case requires examination of two separate questions: first, the reach of the circuit court's exclusive jurisdiction under section 106(a) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a), and second, the manner in which that exclusive jurisdiction must be adjusted to accommodate the provision for habeas corpus in section 106(a)(9), 8 U.S.C. § 1105a(a)(9). These are not issues never before addressed, but, interestingly enough, the second has been infrequently discussed.

### A. *Exclusive Jurisdiction Under Section 106(a)*

In 1961, Congress amended the Immigration and Nationality Act to provide for exclusive judicial review in the courts of appeals of "all final orders of deportation ... made ... pursuant to administrative proceedings under section 242(b) of this Act." Act of Sept. 26, 1961, Pub.L. No. 87–301, § 5(a), 75 Stat. 650, 651 (codified at 8 U.S.C. § 1105a(a) ). The purpose of this change was to expedite the deportation process by eliminating district court review of these petitions, which customarily had been followed by an appeal to a court of appeals. *See Foti v. INS,* 375 U.S. 217, 221–27, 84 S.Ct. 306, 309–13, 11 L.Ed.2d 281 (1963).

■ The order in this case—the denial of a motion to reopen to reinstate voluntary departure—is not, strictly speaking, a final order of deportation. The Supreme Court's interpretation of section 106(a) makes clear, however, that this order comes within the reach of the section 106(a) grant of exclusive jurisdiction. In *Foti,* the Court held that section 106(a) extended to denials of discretionary relief occurring during section 242(b) proceedings. *Foti* left open, however, the status of motions to reopen, which are decided by the BIA. That issue was apparently resolved the following term in *Giova v. Rosenberg,* 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964) (per curiam). *Giova,* a one-sentence disposition, reversed a Ninth Circuit decision that had refused to entertain an appeal from denial of a motion to reopen. *See Giova v. Rosenberg,* 308 F.2d 347 (9th Cir.1962) (per curiam). The Supreme Court's third statement on the reach of section 106(a) jurisdiction was *Cheng Fan Kwok v. INS,* 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968). In that case, the Court held that section 106(a) did not apply to a denial of a *stay of deportation* by an INS district director. Its precise holding is as follows:

> We hold that the judicial review provisions of § 106(a) embrace only those determinations made during a proceeding conducted under § 242(b), including those determinations made incident to a motion to reopen such proceedings.

392 U.S. at 216, 88 S.Ct. at 1976.

The problem, then, is to determine whether the challenge in this case is gov-

---

*Hall,* 529 F.2d 448, 449 (5th Cir.1976) (holding the case not moot because the defendants threatened to revoke the plaintiff's degree if they prevailed). ·

erned by *Cheng Fan Kwok*, or by *Giova*. The INS argues that motions to reopen deportation proceedings are always within section 106(a); motions addressed to district directors (like the stay motion in *Cheng Fan Kwok*) are outside section 106(a) and must be appealed to a district court. Williams argues that the distinction is between motions "consistent" with the final order of deportation and those "inconsistent" therewith. Because Williams sought only voluntary departure and did not challenge the finding of deportability, he argues, his motion fell within *Cheng Fan Kwok*, not *Giova*. On this point, we think the INS is correct.

*Cheng Fan Kwok* supports the INS' argument in a number of places. First, its characterization of the *Giova* decision turned not on the consistency of the relief sought with eventual departure from the country. Rather it only noted that *Giova* involved a motion to reopen the deportation proceeding. *See* 392 U.S. at 211, 88 S.Ct. at 1974 ("[U]nlike the order in *Giova*, the order here did not deny a motion to reopen such a proceeding."). Later in the opinion, the Court elaborated on the rationale for including motions to reopen deportation orders with the deportation orders themselves: "Petitions to reopen, like motions for rehearing or reconsideration, are, as the Immigration Service urged in *Foti*, 'intimately and immediately associated' with the final orders they seek to challenge." *Id.* at 217, 88 S.Ct. 1976 (quoting INS Brief in *Foti*); *see Ghorbani v. INS*, 686 F.2d 784, 788–89 (9th Cir.1982). That is the essence of the *Cheng Fan Kwok* holding set out above.

Moreover, Williams' argument that Motion to Reopen # 2 is consistent with the deportation order can be valid only in a very formal sense. In truth he sought to defeat the deportation order. Only by doing so could he remain indefinitely in this country. William's object, voluntary departure, was to be the means to that end. We conclude that Williams' motion would have fallen within our "exclusive" jurisdiction under section 106(a) were it not for his invocation of habeas jurisdiction. Whether

that alters matters is the issue to which we now turn.

## B. *Habeas Jurisdiction Under Section 106(a)(9)*

In the same statute that provided for "exclusive" review in the courts of appeals, Congress provided that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." Act of Sept. 26, 1961, Pub.L. No. 87–301, § 5(a), 75 Stat. 650, 651–52 (codified at Immigration and Nationality Act § 106(a)(9), 8 U.S.C. § 1105a(a)(9)). Because habeas corpus proceedings in the federal judicial system are instituted in district court, jurisdiction available under section 106(a)(9) may undercut the exclusivity of court of appeals review. The Supreme Court noted this problem as early as *Foti*, *see* 375 U.S. at 231 n. 19, 84 S.Ct. at 315 n. 19, but has never elaborated on it. Apparently, no case in this circuit has ever explored this question thoroughly, although a few cases have accepted jurisdiction under section 106(a)(9). *See*, pp. 744–745, *infra*. Two articulate lines of authority, reflecting thorough analysis, have developed outside the Ninth Circuit.

One line of authority is best expressed in *Daneshvar v. Chauvin*, 644 F.2d 1248 (8th Cir.1981), in which it was decided that section 106(a)(9) granted district courts habeas corpus jurisdiction only "to review ... the denial of discretionary relief where deportability itself is not an issue." *Id.* at 1251. Accordingly, the Eighth Circuit affirmed the district court's refusal to review a final deportation order. For other cases applying this approach, *see Stevic v. Sava*, 678 F.2d 401, 404 n. 5 (2d Cir.1982), *rev'd on other grounds, INS v. Stevic*, 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984); *Te Kuei Liu v. INS*, 483 F.Supp. 107, 109 (S.D.Tex.1980); *United States ex rel. Parco v. Morris*, 426 F.Supp. 976, 978 n. 4 (E.D.Pa.1977).

As neat as this approach is, it encounters problems nonetheless. For example, it

fails to take account of Immigration and Nationality Act § 279, 8 U.S.C. § 1329, which grants jurisdiction to district courts of cases arising under the immigration laws. The language of section 279 is broad. Only the passage of section 106(a) in 1961 took review of final orders of deportation out of the district courts' jurisdiction. Does section 279 thus make section 106(a)(9) redundant? That is, can it be said that section 106(a)(9) merely grants district courts jurisdiction over orders not covered by the preface of section 106(a), when, in fact, section 279 already grants the district courts such jurisdiction?

The most thorough examination of the scope of section 106(a)(9) jurisdiction appears in Judge Gee's opinion in *United States ex rel. Marcello v. District Director*, 634 F.2d 964 (5th Cir.), *cert. denied*, 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 421 (1981). Judge Gee recognized that the intent of Congress was to limit district court jurisdiction but pointed out that Congress, influenced by the provision for the writ of habeas corpus in Article I, § 9 of the federal Constitution, preserved that remedy.

Judge Gee pointed out that in 1961 this was undoubtedly. perceived as a narrow exception. The Supreme Court subsequently expanded the meaning of "in custody," *see Hensley v. Municipal Court*, 411 U.S. 345, 348–49, 93 S.Ct. 1571, 1573–74, 36 L.Ed.2d 294 (1973) (holding that a person released on his own recognizance was "in custody"); *Jones v. Cunningham*, 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963) (holding that a paroled convict was "in custody"), and thereby, he argued, made the habeas jurisdiction applicable to virtually all the cases covered by section 106(a)'s purportedly exclusive jurisdiction. Under this view, the section 106(a)(9) exception was narrow when passed, but has grown with the Supreme Court's expansion of habeas jurisdiction during the intervening decades.[3]

■ Twice in this circuit we have found district court jurisdiction proper under section 106(a)(9). In each instance, however, the explanation of the holding has not been full and extensive. *See Flores v. INS*, 524 F.2d 627, 629 (9th Cir.1975) (per curiam); *Sotelo Mondragon v. Ilchert*, 653

**3.** Judge Gee's explanation of the provision garners support from the legislative history of the provision. Congress clearly understood that the habeas provision undermined the "exclusive" remedy provided in the preface to section 106(a). For example, the House Report commented:

> The section clearly specifies that the right to habeas corpus is preserved to an alien in custody under a deportation order. In that fashion, it excepts habeas corpus from the language which elsewhere declares that the procedure prescribed for judicial review in circuit courts shall be exclusive. The section in no way disturbs the Habeas Corpus Act in respect to the courts which may issue writs of habeas corpus: aliens are not limited to courts of appeals in seeking habeas corpus.

H.R.Rep. No. 1086, 87th Cong., 1st Sess. 29, *reprinted in* 1961 U.S.Code Cong. & Ad.News 2950, 2973. This understanding is obviously inconsistent with the *Daneshvar* court's conclusion that the habeas provision applied only to orders not within section 106(a) exclusive jurisdiction.

Congress attempted to limit the reach of the habeas provision by specifically prohibiting use of a habeas petition to reexamine the results of an earlier judicial proceeding. Act of Sept. 26, 1961, Pub.L. No. 87–301, § 5(a), 75 Stat. 650,

652 (codified at 8 U.S.C. § 1105a(c) ); *see* H.R. Rep. No. 1086, 87th Cong., 1st Sess. 29, *reprinted in* 1961 U.S.Code Cong. & Ad.News 2950, 2973.

Finally, as Judge Gee suggested, Congress' preservation of the Great Writ for the benefit of aliens subject to deportation orders apparently assumed that such relief would be available only while an alien was in the physical custody of the government immediately before deportation. *See* H.R.Rep. No. 1086, 87th Cong., 1st Sess. 24, *reprinted in* 1961 U.S.Code Cong. & Ad.News 2950, 2968 (Letter from Byron R. White, Deputy Attorney General, to Hon. Emanuel Celler, Chairman, House Judiciary Comm., Apr. 18, 1961) (referring to habeas as available "only after [the alien] had been taken into custody"); *id.* at 28, *reprinted* in 1961 U.S.Code Cong. & Ad.News at 2971 (noting that the section "preserves the writ of habeas corpus to an alien detained in custody pursuant to a deportation order").

The INS conceded at oral argument that we should apply to the immigration laws the Supreme Court's expansion of "custody" in the criminal context. We note that Congress obviously did not contemplate the jurisdictional result reached in this case, but feel that our conclusion is consistent with the statute and prior judicial precedents.

F.2d 1254, 1255 (9th Cir.1980). In *Flores*, the court held that section 106(a)(9) jurisdiction applied to an appeal from a district director's refusal to extend a period of voluntary departure. Because this order clearly falls beyond an appeals court's section 106(a) exclusive jurisdiction, the district court would have jurisdiction under section 279, even without section 106(a)(9). Both the *Daneshvar* and *Marcello* lines of authority would have reached the same result. Thus, *Flores* provides little guidance. In *Mondragon*, however, this court affirmed a district court's acceptance of jurisdiction, under section 106(a)(9), of an appeal from a final order of deportation. This result can be reconciled only with the *Marcello* viewpoint—that habeas jurisdiction exists whenever the petitioner is in custody, regardless of the reach of section 106(a)'s exclusive jurisdiction. Although the INS argues that *Mondragon* is clearly wrong, we are bound by its authority. Accordingly, we accept the *Marcello* reasoning and affirm the district court's decision that it had jurisdiction over this petition for a writ of habeas corpus.[4] We do this without the conviction that attends a holding deemed unquestionably correct. The *Daneshvar v. Chauvin* result has much to commend it. It is for others, however, to set us on that particular course.

## IV.

### THE MERITS OF THE HABEAS PETITION

■ We review the district court's grant of the habeas petition de novo. *Roth v. United States Parole Commission*, 724 F.2d 836, 839 (9th Cir.1984). Judicial review of a BIA's denial of a motion to reopen is limited to the abuse of discretion standard. *E.g., Kaveh-Haghigy v. INS*, 783 F.2d 1321, 1322 (9th Cir.1986) (per cu-

riam). Denial was clearly appropriate if Williams did not establish a prima facie case for the underlying relief. *E.g., id.; see* 8 C.F.R. § 3.2. In this case, because the underlying relief, voluntary departure, is committed to the discretion of the Attorney General, *see* 8 U.S.C. § 1254(e), the INS had discretion to refuse to reopen even if Williams did establish a prima facie case. *See INS v. Rios-Pineda*, 471 U.S. 444, 105 S.Ct. 2098, 2102, 85 L.Ed.2d 452 (1985); *cf. Hernandez-Ortiz v. INS*, 777 F.2d 509, 518 (9th Cir.1985) (arguing that, when a motion to reopen seeks mandatory relief, the BIA has no discretion to deny the motion if a prima facie case is established).

■ 8 U.S.C. § 1254(e) authorizes the Attorney General to grant voluntary departure if the alien has been of good moral character for the preceding five years. The implementing regulation requires the alien to demonstrate that he is ready and willing to depart. 8 C.F.R. § 244.1. The BIA based its denial of the motion to reopen on Williams' failure to show that he was ready and willing to depart, as well as on the exercise of its underlying discretion. The BIA exercised its discretion against Williams because of his failure to comply with his earlier promises to depart voluntarily. Of course, he was ready to depart voluntarily on June 19, 1984; but such departure was only to facilitate his return. Such willingness deserves, at best, little credit.

The district court's reversal was premised on the BIA's failure to address the prerequisites for voluntary departure in 8 U.S.C. § 1254(e). This premise was clearly wrong. It was perfectly legitimate for the BIA to base denial on Williams' failure to comply with the regulation. To this day, Williams does not argue that this BIA find-

4. Williams also argues that the INS is estopped to appeal because it did not seek a stay from the district court. This contention is frivolous. In the immigration context, estoppel against the government requires affirmative misconduct. *See INS v. Hibi*, 414 U.S. 5, 8, 94 S.Ct. 19, 21, 38 L.Ed.2d 7 (1973) (per curiam); *Santiago v. INS*, 526 F.2d 488, 491 (9th Cir.1975) (en banc), *cert.*

*denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976). Failure to seek a stay is just not affirmative misconduct. *Cf. United Properties Inc. v. Emporium Department Stores*, 379 F.2d 55, 72 (8th Cir.1967) (refusing to find estoppel from failure of a private party to seek a stay pending appeal).

ing was in error; he argues that it was irrelevant.

More importantly, the BIA based its denial of relief on the exercise of its underlying discretion.[5] We recognize that the performance of the INS in this case, viewed in its entirety, has a Kafkaesque quality. We are aware also that the actions of Williams do not reflect obedience to the law. For us to overlook this disobedience would require an invocation of discretion that rightfully belongs only to the BIA. To refuse to overlook this disobedience cannot be branded as an abuse of discretion by the BIA.

REVERSED.

SCHROEDER, Circuit Judge, dissenting.

I respectfully dissent because this case should be dismissed as moot.

The government appeals from a district court order which gave the petitioner the privilege of voluntarily departing the United States, rather than being deported. The government did not seek to stay that order, although there is no reason why it could not have done so.

The consequence of failing to obtain a stay "is that the prevailing party may treat the judgment of the district court as final, notwithstanding that an appeal is pending." 9 J. Moore, *Moore's Federal Practice* ¶ 208.03 at 8–9 (2d ed. 1985). If irreversible action is taken pending the appeal the appeal will be dismissed as moot. *Id.* at 8–10.

Acting in reliance on that order and on the absence of a stay, Mr. Williams exercised his privilege of voluntary departure and left the country. He did not leave under an order of deportation. At that time, his Labor Certification permitted him to receive an immigrant visa immediately. He was not ineligible to receive the visa under 8 U.S.C. § 1182(a)(17) (1985), because he had not entered the United States within five years after being deported or removed

at government expense; nor was he shown to be excludable under any of the additional grounds for exclusion provided in 8 U.S.C. § 1182. He reentered the United States pursuant to a visa that had been lawfully issued to him.

The test for mootness is whether events have occurred " 'which prevent the appellate court from granting any effective relief even if the dispute is decided in favor of the appellant.' " *Holloway v. United States,* 789 F.2d 1372 (9th Cir.1986), *quoting Matter of Combined Metals Reduction Co.,* 557 F.2d 179, 187 (9th Cir.1977); *see also Dan Caputo Co. v. Russian River County Sanitation District,* 749 F.2d 571, 574 (9th Cir.1984) (action to enjoin construction project moot where court could grant no effective relief due to completion of the work). The test is not a new one, nor did it originate with us. *See Mills v. Green,* 159 U.S. 651, 653, 16 S.Ct. 132, 132, 40 L.Ed. 293 (1895).

This court can give the government no effective relief, for the deportation order which gave rise to this action in district court is now irrelevant to the petitioner's status. The majority opinion cannot reverse the petitioner's actual voluntary departure and his subsequent lawful reentry.

The government acknowledges that an appealing party must obtain a stay pending appeal where action taken in reliance on the lower court's decree cannot be reversed by the court of appeals. *See American Grain Association v. LeeVac, Ltd.,* 630 F.2d 245, 247 (5th Cir.1980); *Fink v. Continental Foundry & Machine Co.,* 240 F.2d 369, 374–75 (7th Cir.1957).

The government fully recognizes its predicament; it offers only two theories in support of its position that it should be allowed to maintain this appeal. The majority rejects both.

---

**5.** Because we reverse the district court's decision on the merits, we need not decide whether the district court had power to reinstate the privilege of voluntary departure. *Compare Contreras-Aragon v. INS,* 789 F.2d 777, 779 (9th

Cir.1986) (holding that a Court of Appeals has no power to grant such relief), *with, e.g., Benitez-Mendez v. INS,* 760 F.2d 907, 910 (9th Cir. 1985) (granting such relief without discussion).

The first theory is that the district court's order was a nullity because it lacked subject matter jurisdiction. This theory the majority properly and expressly rejects.

The second theory is that the petitioner's departure pursuant to the district court's order should be regarded as a "self-deportation" under 8 C.F.R. § 243.5 (1985). That regulation, however, applies only to aliens who depart "while an order of deportation is outstanding." It explicitly excludes from the definition of self-deportation those aliens who leave under grants of voluntary departure. We are not told how this alien, who left while an order for voluntary departure was outstanding, can be regarded as having "self-deported." The majority implicitly rejects this theory as well.

As long as the district court had jurisdiction over the subject matter of the suit and the parties to it, both parties were bound to obey the order granting voluntary departure regardless of whether the order subsequently is determined to be legally incorrect. "An order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. This is true without regard even for the constitutionality of the Act under which the order is issued." *United States v. United Mine Workers of America*, 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947).

The majority purports to reverse the order of the district court granting voluntary departure, but it cannot reverse events that occurred while the order was outstanding. Its announcement of its decision on the merits is no more than a hollow incantation. I therefore dissent.