Masoud **FARZAD**, Petitioner,

v.

Ronald **CHANDLER**, District Director U.S. Immigration & Naturalization Service, Respondent.

Civ. A. No. CA 3–87–0256–G.

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 22, 1987.

---

Brian Bates, Cazorla & Bates, Dallas, Tex., for petitioner.

Paula Mastropieri-Billingsley, Asst. U.S. Atty., Dallas, Tex., for respondent.

## MEMORANDUM ORDER

FISH, District Judge.

This case comes before the court on the motion of petitioner Masoud Farzad ("Farzad") for a writ of habeas corpus and on the motion to dismiss or, alternatively, for summary judgment of Ronald C. Chandler, District Director of the Immigration and Naturalization Service ("INS").

### I. *Factual Background*

Farzad is a native and citizen of Iran. He last entered the United States on September 19, 1976 as a nonimmigrant student under the provisions of 8 U.S.C. § 1101(a)(15)(F). He was ultimately authorized to remain in this country until June 1, 1982. From at least December 24, 1980 until April 22, 1982, Farzad engaged in unauthorized employment in violation of Section 241(a)(9) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(9). He thus failed to comply with the terms of the nonimmigrant status under which he was admitted. In March 1982, INS wrote to Farzad's employer seeking to verify his unauthorized employment. INS issued an order to show cause to Farzad on April 22, 1982. In the course of his deportation hearing, Farzad applied for political asylum and suspension of deportation. Both applications were denied by the Immigration Judge on August 24, 1984. A voluntary departure from the United States was granted.

Farzad then appealed to the Board of Immigration Appeals, which dismissed the appeal on January 27, 1986. Following a petition for review to the United States Court of Appeals for the Fifth Circuit, the decision of the Board of Immigration Appeals was affirmed on October 10, 1986, 802 F.2d 123. On October 24, 1986, INS executed a warrant of deportation. Farzad's petition for rehearing and suggestion for rehearing *en banc* were denied by the Court of Appeals on January 15, 1987, 808 F.2d 1071.

On January 23, 1987, Farzad applied to INS for a stay of deportation, which was denied on January 30, 1987. On January 30, 1987, INS sent Farzad a notice to report for deportation on February 10, 1987. Farzad filed this action on February 5, 1987.[1]

### II. *Analysis*

This case presents an issue of first impression arising from the Immigration Reform and Control Act of 1986 ("the Reform Act" or "the Act"). Title II of the Reform Act adds a new section, § 245A, providing for the legalization of aliens who entered the United States prior to January

---

1. INS argues that this court lacks subject matter jurisdiction under 8 U.S.C. § 1105a(9) because Farzad is not in custody, *citing United States ex rel Marcello v. District Director of Immigration & Naturalization Service,* 634 F.2d 964, 971 (5th Cir.), *cert. denied,* 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 421 (1981). Relying on *Flores v. United States Immigration and Naturalization Service,* 524 F.2d 627 (9th Cir.1975), Farzad urges in reply that INS' order that he appear for deportation is sufficient to satisfy the "in custody" requirement for habeas relief.
Although the Ninth Circuit has subsequently commented that the explanation of *Flores'* holding was not "full and extensive," *Williams v. Immigration and Naturalization Service,* 795 F.2d 738, 744–45 (9th Cir.1986), and although the issue is not free from doubt, INS has not persuaded the court that subject matter jurisdiction is lacking. Accordingly, the motion to dismiss is denied. *Cf. Williamson v. Tucker,* 645 F.2d 404, 415 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) (judicial economy best promoted when existence of a federal right is directly reached and, if no claim found to exist, case is dismissed on the merits).

1, 1982. In order to qualify, the alien must establish

> ... that he entered the United States before January 1, 1982, and that he has resided continuously in the United States in an unlawful status since such date and through the date the application is filed under this subsection.

§ 245A(a)(2)(A).

In the case of an individual who, like Farzad, entered the country as a lawful nonimmigrant,

> ... [he] must establish that [his] period of authorized stay as a nonimmigrant expired before such date [1/1/82] through the passage of time or [his] unlawful status was *known to the Government* as of such date.

§ 245A(a)(2)(B) (emphasis added).

Recognizing the necessity for an interim procedure for aliens apprehended prior to the formal application period, Congress provided that if an alien could establish a *prima facie* case of eligibility for legalization, then he could not be deported until such time as he could formally apply under the Act. § 245A(e)(1)(A).

Upon receipt of the January 15, 1987 decision of the Court of Appeals, Farzad sought the benefit of such a stay of deportation. He established that he legally entered the United States prior to January 1, 1982; that he was in unlawful status as of December, 1980; that INS knew of his unlawful status at some unknown time prior to March 11, 1982, when INS wrote his employer to verify his employment; and that he was placed in deportation proceedings in April, 1982. Farzad was denied a stay of deportation.

The only element of Farzad's *prima facie* case at issue here is whether, as of January 1, 1982, his unlawful status was "known to the Government." Relying on

its proposed regulations interpreting that phrase—i.e., that "known to the Government" means "known to INS," INS denied Farzad's application for a stay because INS did not know of his unlawful status (i.e., his unauthorized employment) on January 1, 1982. Farzad then sought redress in this court.[2]

The phrase "known to the Government" is not defined in the Reform Act. In deciding whether the INS interpretation of the phrase conflicts with the language of the Act, this court must follow the analysis prescribed by the Supreme Court:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (footnotes omitted).

Turning to the first question in the analysis, this court is of the opinion that Congress did not unambiguously express its intent on what "known to the Government" means.[3] Farzad contends that

---

2. After this suit was filed, INS published its final rules implementing the legalization program mandated by the Reform Act. Those rules did not change the proposed interpretation of "known to the Government." Also, on June 3, 1987, Farzad timely applied for legalization under the act.

3. The INS definition, at 52 Fed.Reg. 8754 (March 19, 1987), provides as follows:
   (d) In the term "alien's unlawful status was known to the government," the term "government" means the Immigration and Naturalization Service. An alien's unlawful status was "known to the government" only if:
   (1) The Service received factual information constituting a violation of the alien's nonim-

"known to the Government" means exactly what it says: that some department or agency of the federal government had information, before January 1, 1982, which indicated his unlawful status. INS maintains, on the other hand, that "the Government" means only INS, and that "known" means that, before January 1, 1982, INS: (1) received factual information constituting a violation of the alien's non-immigrant status which was recorded in the official INS alien file; or (2) had already made an affirmative determination of deportability.

INS's position that "the Government" means only the INS is not supported by the language of the Reform Act. Although

the argument is persuasive that "the Government" must of necessity mean only the Attorney General or INS, given their exclusive role in administering the Act (*see* 8 U.S.C. § 1103), Congress was aware of that role when the Act was drafted. Except in this section, Congress refers specifically to the Attorney General and INS throughout the Reform Act; here, by contrast, it consciously chose to use the term "the Government." In this court's view, Congress must have intended "the Government" to be a broader term than "the Attorney General" or "the INS." Accordingly, INS' interpretation of "the Government" is impermissibly narrow.

migrant status from any agency, bureau or department, or subdivision thereof, of the Federal Government, which information was stored or otherwise recorded in the official Service alien file, whether or not the Service took follow-up action on the information received. In order to meet the standard of "information constituting a violation of the alien's nonimmigrant status," the alien must have made a clear statement or declaration to the other federal agency, bureau or department that he or she was in violation of nonimmigrant status; or

(2) An affirmative determination was made by the Service prior to January 1, 1982 that the alien was subject to deportation proceedings. Evidence that may be presented by an alien to support an assertion that such a determination was made may include, but is not limited to, official Service documents issued prior to January 1, 1982, i.e., Forms I–94, Arrival-Departure Records granting a period of required departure; Forms I–210, Voluntary Departure Notice letter; Forms I–221, Order to Show Cause and Notice of Hearing, and Forms I–543, Order of Denial of Application for Change of Nonimmigrant Status granting a period of required departure. Evidence from Service records that may be used to support a finding that such a determination was made may include, but is not limited to, record copies of the aforementioned forms and other documents contained in alien files, i.e., Forms I–213, Record of Deportable Alien; Unexecuted Forms I–205, Warrant of Deportation; Forms I–265, Application for Order to Show Cause and Processing Sheet; Forms I–541, Order of Denial of Application for Extension of Stay granting a period of required departure, or any other Service record reflecting that the alien's nonimmigrant status was considered by the Service to have terminated or the alien was otherwise determined to be subject to deportation proceedings prior to January 1, 1982, whether or not deportation proceedings were instituted.

The rationale behind this definition is articulated in the published Supplementary Information preceding the proposed rules, which appears in the Federal Register at 52 Fed.Reg. 8753:

(3) *Definition of the Term "Known to the Government"*

An alien who entered the United States as a nonimmigrant before January 1, 1982, may be eligible for legalization if the alien's "unlawful status was known to the Government" as of January 1, 1982. The Service, in this proposed rule, is interpreting the term "known to the Government" to mean "INS." This interpretation as previously set forth in the preliminary draft regulations, was challenged by many commentators. The Service initially proposed that an alien's unlawful status would have been known by the Service, if the Service had made an affirmative determination that the alien was subject to deportation proceedings. In light of the public comments, the Service has reconsidered its initial proposal. Under this proposed rule, if the Service received information as of January 1, 1982 from a federal agency reflecting the fact that the alien clearly expressed to the federal agency that he or she was in violation of his or her lawful status, and that information is contained in the alien's A File, the alien's unlawful status would be known to INS regardless of whether or not the Service made a determination that the alien was subject to deportation proceedings.

Pursuant to section 103 of the INA, only the Attorney General is charged with the administration and enforcement of the Immigration laws. Correspondingly, only the Attorney General can make a determination that an alien's status is "unlawful." To interpret the word "Government" to include Federal, State, and local agencies would make the administration of section 201 difficult, if not impossible and would implicitly vest government agencies with an authority that Congress specifically granted only to the Attorney General.

■ Farzad has provided *prima facie* evidence that, before January 1, 1982, the Social Security Administration and the Internal Revenue Service had records that he was working—i.e., evidence of his unlawful status. While the relevant language in the Act is specifically not restricted to INS, the Act fails to provide an answer as to how broadly "the Government" should be interpreted.[4] Since the amnesty provisions of the Reform Act are clearly remedial in nature, they must be broadly construed in order to effectuate the congressional purpose of allowing aliens to apply for legalization of their status. *See Bailey v. Brooks*, No. C86–1914R, slip op. at 7 (W.D. Wash. Dec. 15, 1986); H.Rept. 99–682 Part 1, 99th Cong., 2d Sess. 73 (1986). This court is of the opinion that Congress intended the phrase "the Government" to be broader than merely the INS, and at least broad enough to include the Internal Revenue Service and the Social Security Administration.

■ INS also contends that "known" means that it had information in its official file revealing an alien's unlawful status or that it had already made a determination of deportability. This interpretation appears implausible because it collapses the two bases for legalization set forth in section 245A(a)(2)(B) to a single ground. *Kalaw v. Ferro*, above, at 1169.

The further requirement that the "factual information" received from another government agency must have been in an official INS file means, as a practical matter, that this provision could rarely, if ever, be invoked. INS concedes that the vast majority of nonimmigrants do not have an official file with the INS unless and until they are somehow determined to have been in violation of their status.

Even if the person were under suspicion by INS prior to January 1, 1982, it has been documented in this case that INS does not record how or when it initially learned of such a violation of status. Without such recordkeeping, INS would make it impossible, through its own practices, for an applicant to meet the burden required by its interpretation of the Act. Farzad, in fact, has persistently maintained that, under the interpretation of "known to the Government" urged by INS, no alien would ever be eligible; he would either have been deported or would not be able to document his presence due to gaps in INS's recordkeeping. That position has gone conspicuously unchallenged by INS.

The court is thus persuaded that the interpretation of "known" by INS is not plausible, because it denies coverage to virtually every alien it was intended to reach.

## III. *Conclusion*

For the foregoing reasons, the court is of the opinion that the regulations at issue are inconsistent with the Reform Act and are outside the scope of INS's authority. The court is also of the opinion that Farzad has presented a *prima facie* case for legalization under a fair reading of the Reform Act. Accordingly, INS is prohibited from utilizing the definition of "known to the Government", as set forth at 52 Fed.Reg. 8752 and 8754, to deny Farzad's application for legalization filed June 3, 1987.

Farzad's petition for a writ of habeas corpus is GRANTED; he shall remain at liberty without bond pending further order of this court. Deportation proceedings instituted against Farzad will continue to be STAYED until further order of this court. INS's motion to dismiss, or, in the alternative, for summary judgment is DENIED.

SO ORDERED.

---

**4.** The legislative history of the Reform Act does not resolve this ambiguity. *See Kalaw v. Ferro*, 651 F.Supp. 1163 (W.D.N.Y.1987), at 1170 (discussing the breadth of construction for phrase "the government").