Celso E. LÓPEZ LÓPEZ, Plaintiff,

v.

R.D. GARRIGA, I. Rivera; individually and in their official capacities as agents of the United States Immigration and Naturalization Service; Allan C. Nelson, in his official capacity as the Commissioner of the United States Immigration and Naturalization Service; James H. Walker in his official capacity as District Director of the United States Immigration and Naturalization Service for the District of Puerto Rico; Police officer Santiago Cruz, individually and in his official capacity as an officer of the Puerto Rico Police; Police officer Orozco, individually and in his official capacity as an officer of the Puerto Rico Police, Defendants.

Civ. No. 88–0636 (JP).

United States District Court,
D. Puerto Rico.

Aug. 21, 1989.

---

Charles S. Hey Maestre, Bayamón, P.R., for plaintiff.

Sylvia Carreño Coll, Federal Litigation Div., Dept. of Justice, San Juan, P.R., and Eduardo E. Toro Font, Asst. U.S. Atty., Hato Rey, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

The case is now before the Court for ruling on the plaintiff's motions under Fed. Rule Civ.Pro. 50 and for the framing of an injunction. At trial, the jury rendered a verdict for all defendants on the plaintiff's damages claims under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Federal Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29

L.Ed.2d 619 (1971). The defendants' pretrial and mid-trial motions for summary judgment based on qualified immunity were denied based on the insufficiency of the factual record at that time. The issue of qualified immunity was not presented to the jury. The plaintiff contends that he is entitled to judgment notwithstanding the verdict or, in the alternative, a new trial because the evidence was insufficient to support a verdict for the defendants.

### I. Sufficiency of the Evidence

Plaintiff Celso López López brought this action to redress alleged violations of his fourth- and fifth-amendment rights by two agents of the U.S. Immigration and Naturalization Service and by a Puerto Rico police officer at the immigration checkpoint at the Luis Muñoz Marin airport in San Juan. In examining the plaintiff's motion, the Court considers the evidence and inferences in the light most favorable to the plaintiff to determine whether the evidence could lead reasonable people to one conclusion, *i.e.*, that the verdict should be for the plaintiff. *Wildman v. Lerner Stores Corp.*, 771 F.2d 605, 607 (1st Cir.1985).

### A. Federal Agents Garriga and Rivera

■ The plaintiff claims that the evidence presented to the jury did not, as a matter of law, establish that agents Garriga and Rivera had sufficient reason to question and detain him. The jury was instructed that the actions of the agents were proper if those agents had "reasonable, objective suspicion that the plaintiff was an illegal alien."[1] This statement of the law derives from settled fourth-amendment law,[2] including *INS v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984), which concerned questioning of factory workers by INS agents.

The Court in *Delgado* held that the workers' encounters with the INS agents in their factories were consensual, and therefore not "seizures," despite the INS practice of stationing armed agents at the exits

---

**1.** The full text of the relevant jury instructions is contained in the APPENDIX, infra.

**2.** *See Graham v. Connor*, —— U.S. ——, 109 S.Ct. 1865, 1870–1871, 104 L.Ed.2d 443 (1989).

of the buildings. In addition, the Court noted that—

police questioning, by itself, is unlikely to result in a Fourth Amendment violation. While most citizens will respond to a police request, the fact that people do so without being told they are free not to respond, hardly eliminates the consensual nature of the response. *Cf. Schneckloth v. Bustamonte,* 412 U.S. 218, 231–234, 93 S.Ct. 2041, 2049–2051, 36 L.Ed.2d 854 (1973). Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would have believed he was not free to leave if he had not responded, one cannot say that the questioning resulted in a detention under the Fourth Amendment. But if the person refuses to answer and the police take additional steps—such as those taken in Brown—to obtain an answer, then the Fourth Amendment imposes some minimal level of objective justification to validate the detention or seizure. (Citing *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980), and *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889 (1968).)

*Delgado,* 466 U.S. at 216, 104 S.Ct. at 1763.

The doctrine of qualified immunity protects most law enforcement officers from personal liability for damages in all but the most egregious cases of unconstitutional actions. This Court denied the defendants' motions for summary judgment, which were based on qualified immunity, because the factual record was not sufficiently developed. The Court also denied qualified immunity at the close of the plaintiff's evidence, after the testimony only of Celso López and INS Assistant District Director Robert Bowles, and at the close of the defendants' case.

The jury's determination on the merits of the case mooted the issue of qualified immunity. Because the Court now upholds the jury's verdict, it need not reconsider the legal questions raised by the defendants' qualified-immunity motion. The Court notes, however, that even if it had found the verdict to be unsupported by the evidence, it would have granted qualified immunity to the federal defendants because the plaintiff offered no objective evidence that the defendants knowingly violated the law. *See Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

With respect to the merits of López' claim, and after careful review of the proceedings, the Court finds ample evidence to support the jury's verdict that agents Garriga and Rivera had a sufficiently reasonable suspicion to detain López for questioning. Defendant Rivera testified that INS agents are skilled in spotting illegal aliens on the basis of trends and profiles. He particularly noted that extreme behavior, either in avoiding or cooperating with the inspection, causes agents to become quite suspicious.

Defendant Rivera saw López approach the INS checkpoint quickly in a slouch, avoiding eye contact, and passing by a group of other travelers in line for inspection, apparently intending to "swish right through." Defendant Garriga stated that he was alarmed by López' rapid movement, his Groucho Marx-type slouch, and his movement through the orderly line of passengers. Garriga thought that López could be an illegal alien, that he might have a hearing or mental impairment, or that he could be a hijacker. Garriga sought to determine if López was going to the mainland U.S. and, if so, what his citizenship might be.

Garriga left the checkpoint, followed López, and continued asking questions which López ignored. When López began turning left to proceed to his departure gate, Garriga blocked his path. When López attempted to step around Garriga, Garriga blocked his path again. This encounter caused enough commotion to alert the attention of Puerto Rico Police Officer Santiago Cruz, who joined the fracas and escorted López to the inspection area by the elbow.

A short time later, López decided to leave the inspection area. When defendant Rivera attempted to halt this escape, López sat on the floor. Police Officers Santiago Cruz and Orozco carried him back to the

inspection area. An INS supervisor who knew Celso López soon arrived, and López was released from his detention.

There is no question that López never consented to questioning and that he was detained. The question for the jury was the reasonableness of the detention, or seizure, in light of its justification. The jury had every opportunity to weigh the nature of the detention—which was relatively short—against the suspicions described by the INS agents, and it determined the defendants' actions to have been reasonable and justified.

The evidence presented, as outlined above, was not of the nature and weight that it should compel reasonable people to but the one conclusion that the plaintiff entreats. Considering the behavior López exhibited in avoiding the inspection, as well as the careful response of the agents in seeking to confirm their suspicions of illegal alienage, the Court finds that the jury was justified in finding no violation of López' rights by agents Garriga and Rivera. The Court therefore DENIES the motions for judgment notwithstanding a verdict and for a new trial.

### B. *Officer Santiago Cruz*

■ The jury's verdict with respect to Officer Santiago Cruz is likewise supported by the evidence presented. The evidence showed that Santiago was on general duty at the airport, not assigned to assist the INS inspection in any way. He was attending to a problem at the security checkpoint when a security guard called his attention to the commotion between López and Garriga. Santiago approached, and responding to Garriga's request for help, he led López to the INS checkpoint area. Later, he helped move López back to the checkpoint, as described above.

The jury had sufficient evidence to reach the conclusions that Officer Santiago acted solely under his authority to keep the peace at the airport and that his actions toward López were consistent with this purpose and reasonable under the circumstances. The plaintiff's claim that Santiago acted

solely to enforce federal immigration law finds no support whatsoever in the evidence. The Court therefore DENIES the plaintiff's motion for judgment notwithstanding the verdict and new trial.

### II. Equitable Relief

■ Plaintiff Celso López has requested equitable relief in the form of a declaration and an injunction to prevent future violations of his fourth- and fifth-amendment rights.

The plaintiff requests a declaration that the current checkpoint system is unlawful and unconstitutional insofar as it entails inspection of U.S. citizens travelling from San Juan to other points on the island; that the inspection given López by defendants Garriga and Rivera was unconstitutional; that the police of Puerto Rico have no authority to assist the INS officers in the immigration inspections; and that defendant Santiago's assistance of Garriga and Rivera in the inspection of López was unconstitutional.

The requested declarations against the individual defendants merely duplicate the issues submitted to the jury and are inappropriate for a declaration of rights. Also inappropriate is any declaration with respect to the police of Puerto Rico. The evidence at trial clearly indicated that Officer Santiago did nothing more than exercise his responsibilities to address an apparent breach of peace at the airport. There was no evidence presented that the police of Puerto Rico have any policy or practice of assisting in the INS inspections, and the Court finds no basis for any equitable action against the police.

The INS practice of inspecting passengers bound to Mayagüez, Puerto Rico, and other locations outside the continental United States requires, on the other hand, close scrutiny by the Court.

In general, the practice is authorized by 8 U.S.C. § 1182(d)(7) and 8 CFR § 235.5(a). *López López v. Aran*, 844 F.2d 898 (1st Cir.1988).[3] At least with respect to INS

---

3. *López López v. Aran* is an earlier case, un-

related to the present case except in identity of

inspection of travelers bound for the continental U.S., the practice constitutes the sort of "reasonable minimal intrusion" permitted by the fourth amendment. *Id.* at 907. As noted by the Court of Appeals, however, "[c]heckpoint stops are indubitably 'seizures' within the meaning of the fourth amendment, *see Martínez–Fuerte,* 428 U.S. at 556, 96 S.Ct. at 3082, so the facts of each case, including this one, must be analyzed to see if the precise scenario passes fourth amendment muster." *López López v. Aran,* 844 F.2d at 905.

The factual setting in the present case differs somewhat from that in *Celso López I.* Many of the facts are the same:

• The INS checkpoint and the security checkpoint, where bags are scanned and people walk through a metal detector, stand before a group of airport departure gates;

• Only travelers with tickets are permitted to enter the area of the checkpoints;

• After security inspection, travelers approach the INS inspection point, which is identified by a sign;

• The INS agents conduct an initial inspection to determine the immigration status of prospective passengers by asking them about their citizenship;

• The question is usually posed while the subject is walking toward the area of the departure gates;

• The subject need not halt—nor necessarily slow down—in order to respond;

• When a traveler affirms that he or she is a citizen of the United States, and no further suspicion is aroused, the question-

ing stops, and the person remains free to proceed;

• After the immigration inspection, the U.S.-bound passengers wait in a nearby seating area until their flights are called, and they board the planes through the gates at the seating area.

• Passengers of the smaller planes—those used for short flights to, for example, Mayagüez or St. Thomas—must walk to gates near the end of the terminal.

Celso López's procedure on December 6, 1987, then, was to show his ticket to gain access to the checkpoint area; to undergo the security inspection; to undergo the INS pre-flight inspection; to walk past the gates used for U.S.-bound flights; to wait in the departure-gate area for the flight to Mayagüez; to show his ticket again for boarding; and to board the plane. López encountered his difficulties with the defendants at the INS inspection station, however, and the normal process was disrupted.

The only difference with *Celso López I* is that López was not going to the continental United States. While this distinction might seem trivial, it undercuts much of that decision's fourth amendment "prudential balancing"[4] under *United States v. Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).[5] It cannot be said in this case, as it was in *Celso López I,* that the checkpoint is plausibly located to control the flow of persons to the mainland; that the checkpoint meets the public's need to interdict the flow of illegal aliens to the continental United States; and that López' expectation of privacy was as low as that in *Martinez–Fuerte.* Instead, the checkpoint

---

plaintiff and similarity of factual underpinning. In *López López v. Aran* (or *Celso López I*), the Court of Appeals found that the INS checkpoint system was permissible under the fourth amendment, but the Court remanded the case for a determination of the INS agents' "reasonable suspicion that López was an illegal alien" at the time they impeded López' progress toward his plane. *López López v. Aran,* 844 F.2d at 910. In *Celso López I,* the plaintiff was traveling from San Juan to Baltimore.

**4.** *López López v. Aran,* 844 F.2d at 903.

**5.** In *Martinez–Fuerte,* the Court upheld, as consistent with the fourth amendment, the use of fixed checkpoints to conduct immigration inspections of automobiles. One checkpoint was located 66 miles from the Mexican border in California and the other 65–90 miles from the border in Texas. Balancing the need to make routine checkpoint stops against the intrusion upon fourth-amendment interests, the Court concluded that the stops could be made in the absence of any individualized suspicion at reasonably located checkpoints. *Martinez–Fuerte,* 428 U.S. 543, 556–562, 96 S.Ct. 3074, 3082–3085, 49 L.Ed.2d 1116 (1976).

is located for the convenience of the INS; in a place where all travelers are questioned, regardless of their destinations; and near a conspicuous sign stating that the purpose of the inspection is to determine admissibility to the United States.

The primary justification for present checkpoint system, which unquestionably gave rise to López' detention, is the costliness of other locations for the inspection stations. The current location is at a bottleneck, a point that can be efficiently observed by one or two INS agents. INS Assistant District Director Bowles testified that conducting inspections at each departure gate would needlessly delay the boarding of passengers, in addition to increasing the number of agents needed.

It would also be impossible to route local and foreign travelers around the checkpoint because the departure gates for these flights vary, depending upon the needs of the airport. Furthermore, there would be no way to prevent illegal aliens from avoiding inspection through multiple ticketing (that is, an alien could purchase tickets both to New York and Mayagüez, show the Mayagüez ticket to the INS, and then actually use the New York ticket once INS inspection has been avoided).

Although these considerations obviously demonstrate that the procedures chosen by the INS are administratively efficient, *see Ramírez v. Webb*, 599 F.Supp. 1278, 1288 (W.D.Mich.1984), the Court cannot agree that they justify the resulting intrusion upon the rights of travelers whose admissibility is not in question. *Cf. International Molders' and Allied Workers v. Nelson*, 643 F.Supp. 884, 902 (N.D.Cal.1986). Questioning these travelers is no different from interrogating unconsenting pedestrians in Mayagüez. And "to stop and question a pedestrian, there must be some *reasonable suspicion of illegal conduct.*" *Ramírez*, 599 F.Supp. at 1286. There is no question in this case that the questioning takes place in the complete absence of suspicion.

The First Circuit has held that the INS procedures—when applied to passengers who are traveling to the mainland—are couched with sufficient safeguards, and they meet a sufficiently weighty government need, to make them constitutionally permissible. *López López v. Aran*, 844 F.2d 898. But these same considerations would obviously not justify establishing a checkpoint on the streets in the Dominican neighborhoods of San Juan. Neither would they justify a checkpoint on the road to the airport or at an entrance to a terminal. Likewise, the Court concludes that they do not justify establishing a checkpoint at the entrances to the departure areas.

The INS is obligated to use its checkpoint procedures only to inspect passengers bound for the mainland United States. The current "wholesale intrusion into the privacy of large numbers of the citizenry," *López López v. Aran*, 844 F.2d at 915 (Torruella dissenting) is far too great to permit the INS to continue casting so broad a net in its quest for illegal aliens. The Court shall therefore enter a declaration and injunction against continuing this practice.[6]

The Court therefore DECLARES, pursuant to Fed.Rule Civ.Pro. 57, that subjecting Celso López, or any other traveler, to pre-flight inspection when he is taking a plane to Mayagüez, or any other non-continental U.S. destination, violates the passenger's fourth-amendment rights.

Because the plaintiff has inadequate remedies at law and has established a likelihood of substantial, immediate, irreparable, and continuing harm, entry of a permanent injunction is appropriate. Therefore, pursuant to Fed.Rule Civ.Pro. 65 and to the findings of fact and conclusions of law, above, the Court ORDERS as follows:

Allan C. Nelson, in his official capacity as Commissioner of the United States Immigration and Naturalization Service; James H. Walker, in his official capacity as District Director of the United States Im-

---

6. The Court declines the plaintiff's invitation to enter an injunction that would specify the precise manner that the INS should conduct its activities—either moving the inspection stations or creating separate "red lines" and "green lines." It should be sufficient to enjoin use of the pre-flight inspection process on passengers bound to non-mainland locations.

migration and Naturalization Service; and Ramon D. Garriga and Isidra Rivera, both in their individual capacities and in their official capacities as agents of the Immigration and Naturalization Service are hereby restrained from subjecting United States citizens to the pre-flight inspection practice authorized and established pursuant to 8 U.S.C. § 1182(d)(7) and 8 C.F.R. § 235.5(a) when the passengers are passing through Luis Muñoz Marin Airport but not departing Puerto Rico for the continental United States. No United States citizen at the airport, unless departing Puerto Rico for the continental United States, shall be questioned, detained, or otherwise inspected by INS agents unless the agents have an objectively reasonable and articulable suspicion that the person is an illegal alien.

IT IS SO ORDERED.

## APPENDIX

The plaintiff in this case seeks money damages for alleged violation of his rights under the constitution and laws of the United States.

Specifically, plaintiff alleges that on December 6, 1987, at Luis Muñoz Marin International Airport, the defendants chased, questioned and detained him as he attempted to board an airline flight to Mayagüez, Puerto Rico, for which he had a valid ticket and boarding pass. The plaintiff claims that they attempted to apply the INS "pre-flight inspection" practice to him in the absence of any objectively reasonable and articulable suspicion that he was an illegal alien, and despite the fact that he was not departing for the continental United States, and that he was therefore not subject to the INS practice.

The following facts are undisputed:

1. At the time, defendants Rivera and Garriga were designated and acting under color of law as U.S. Immigration and Naturalization Service (INS) agents.

2. Defendant Santiago Cruz was designated and acting under color of law as a Puerto Rico police officer.

3. An INS checkpoint was established at the entrance to an area which contained numerous gates for flights to the mainland United States, for local flights, and for international flights.

4. Two signs at the entrance indicated that the purpose of the checkpoint is to prevent illegal or undocumented aliens from entering the mainland United States. This checkpoint was established under due legal authority.

5. The plaintiff was traveling to Mayagüez, Puerto Rico, not the continental United States.

6. The plaintiff passed by the checkpoint without stopping.

7. Defendant Garriga questioned and detained the plaintiff.

8. The plaintiff did not respond verbally, but wrote a message stating that he would not answer any questions.

9. After being detained, the plaintiff was allowed to board his flight after he was determined to be a U.S. citizen.

Plaintiff alleges that defendants knowingly violated his constitutional rights to be free from unreasonable searches and seizures, and from deprivation of his liberty without due process of law. You, the jury, must determine whether plaintiff has proven his allegations by a preponderance of the evidence as to the reasonableness or unreasonableness of the detention, so as to make the defendants liable.

The plaintiff claims that he was injured and sustained damages and that defendants are liable for one or both of the following reasons:

The defendants, unlawfully and without reasonable objective suspicion that the plaintiff was an illegal alien, detained him;

and

the defendants, unlawfully and without reasonable objective suspicion that the plaintiff was an illegal alien, restrained his movement and freedom to move without due process of law.

The defendants each deny that they were guilty of any of the things claimed by the plaintiff. The defendants further deny that the plaintiff was injured or suffered damages.

## CIVIL RIGHTS ACTIONS AND PERSONAL LIABILITY

The motions for damages are directed against public officers in their individual or personal capacities for their actions under color of official authority and not against the government.

## PERSONAL INVOLVEMENT

A finding of liability against a defendant requires that it be alleged and proved that he was personally and directly involved in the events that violated plaintiffs' civil rights or in causing those events to happen. Each defendant individually responds for his own acts or omissions in the light of his own duties.

As INS agents, the defendants were entrusted with enforcing federal immigration laws and have the lawful authority and duty to utilize information and their trained criteria in the field to detain, for further inspection, any person whom they reasonably believed to be an illegal alien.

The Fourth Amendment provides that no person shall be subjected to an unreasonable search and seizure. This means that the plaintiff had a right not to be detained and further questioned, unless the defendants had reasonable belief that the plaintiff was an illegal alien, based on sufficient articulable facts.

Defendants' actions related to the questioning and detention of plaintiff were lawful *only if* defendants had a sufficiently reasonable suspicion that plaintiff was an illegal alien. If defendants did not have such a reasonable suspicion, then the pre-ventive measures taken against plaintiff on December 6, 1987, were unlawful and you must find for plaintiff. If you find, on the other hand, that Mr. López' behavior aroused a reasonable suspicion in the minds of the INS agents that he was an illegal alien, then you must then find for the federal defendants.

"Sufficiently reasonable suspicion" in this context exists where the facts and circumstances within the INS agents' knowledge, when taken together with their expertise in the field, are sufficient to persuade a person of reasonable prudence to believe that plaintiff was an illegal alien and/or a passenger departing to the continental United States. In considering whether there was justification for the preventive measures taken against plaintiff, you should consider this matter not from a technical standpoint, but from the standpoint of the factual and practical considerations of everyday life in Puerto Rico upon which reasonable people act. Specifically, in this case you must determine whether defendants had specific articulable reasons to believe plaintiff could reasonably be a U.S.–bound departing passenger and/or an illegal alien during the events which occurred on December 6, 1987.

If the defendant INS agents could not show such sufficiently reasonable suspicion, —that is, that plaintiff was an illegal alien at the time they took measures to prevent him from proceeding to his flight— and that their actions were thus not based on specific articulable reasons, you must find for plaintiff.

If you determine the contrary, you must find for the federal defendants.

A citizen has a right to remain silent when going through the INS pre-flight inspection checkpoint.

The establishment of the checkpoint by the INS at the airport in order to perform these inspection was a reasonable exercise of the Government's authority to stop and question passengers bound to the continental U.S. as to their immigration status.

Cooperation between local police and immigration authorities is not inherently improper. However, detention of admitted or

suspected aliens beyond the needs of local law enforcement, and solely designed to aid in enforcement of the federal immigration laws, would be unauthorized and unlawful.

You must determine, by a preponderance of the evidence presented, whether defendant Puerto Rico Police Officer Santiago Cruz intervened with plaintiff on December 6, 1987, solely to aid in enforcement of federal immigration laws, or under the authority he has as a Puerto Rico police officer.

If you find that defendant Santiago Cruz acted under his authority as a Puerto Rico police officer, you must determine whether he had reasonable cause to do so. If you determine that he lacked reasonable cause to intervene, or if you determine that he acted solely to enforce immigration laws, then you must find for plaintiff.

If you determine to the contrary, you must find for the defendant.

### DAMAGES

Federal law provides that any individual may seek redress in this Court, by way of money damages, against federal and Puerto Rico employees who, under color of their official authority, deprive that individual of any of his constitutional rights.

The fact that plaintiff's rights are found to have been violated in itself entitles him to actual damages. Therefore, if you decide for the plaintiff on the issue of liability, you must then fix the amount of money damages which will reasonably and fairly compensate him for any harm which the wrongful conduct of the defendants substantially brought about. Among the elements of injury and harm which you should consider are:

1. The emotional and mental pain and suffering of plaintiff during his detention and questioning, including fear, humiliation and mental anguish.

2. The public embarrassment and inconvenience experienced by plaintiff as a result of the preventive measures taken by defendants.