Celso LOPEZ, a/k/a Celso Lopez
Lopez, Plaintiff, Appellee,

v.

R.D. GARRIGA, et al.,
Defendants, Appellants.

No. 90–1422.

United States Court of Appeals,
First Circuit.

Heard Sept. 7, 1990.
Decided Oct. 17, 1990.

Eduardo E. Toro Font, Asst. U.S. Atty., Bayamon, P.R. with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief for defendants, appellants.

Charles S. Hey Maestre, Rio Piedras, P.R., with whom Celso E. Lopez Lopez, San Sebastian, P.R., was on brief for plaintiff, appellee.

David J. Vendler, with whom Bryan, Cave, McPheeters & McRoberts and Lenni B. Benson were on brief for National Immigration Project, National Lawyers Guild, amicus curiae.

Before BREYER, Chief Judge, VAN GRAAFEILAND,* Senior Circuit Judge, and SELYA, Circuit Judge.

* Of the Second Circuit, sitting by designation.

SELYA, Circuit Judge.

This appeal marks the latest chapter in what has become a crusade: the unremitting effort of plaintiff-appellee Celso Lopez Lopez (Lopez), a native Puerto Rican, to eliminate, or at least curtail, the operations of certain checkpoints established by the federal Immigration and Naturalization Service (INS) at the Luis Munoz Marin International Airport in Isla Verde, Puerto Rico.[1] Because we believe that the district court should have closed the book on this case sooner rather than later, we reverse the grant of equitable relief.

### Background

The backdrop of the original litigation (which we shall call *"Lopez I "*) has been vividly portrayed in a series of opinions, *see Lopez Lopez v. Aran,* 649 F.Supp. 853 (D.P.R.1986), *aff'd in part and rev'd in part,* 844 F.2d 898 (1st Cir.1988), *opinion after remand,* 894 F.2d 16 (1st Cir.1990), and it would be pleonastic to rehearse it here. Instead, we refer the reader who hungers for more copious detail to those several opinions. For the purpose at hand, it suffices to say that Lopez, thwarted anew by federal functionaries while attempting to board a flight to Mayaguez, Puerto Rico, brought a fresh suit (which we shall call *"Lopez II "*) against the INS agents who detained him, various other INS officials, and two local police officers.

In *Lopez II,* plaintiff's central thesis was that the INS agents acted unlawfully because they had no sufficient authority or reason to question and detain him in connection with an intra-island flight. The pertinent facts are documented in a further rescript of the district court. *See Lopez Lopez v. Garriga,* 718 F.Supp. 1066 (D.P.R. 1989). The case was tried to a jury on plaintiff's claim for money damages.[2] Apart from the amount of any damages to be awarded, there was only a single controverted issue before the jury.[3] As the lower court phrased it:

> Defendants' actions related to the questioning and detention of plaintiff were lawful *only if* defendants had a sufficiently reasonable suspicion that plaintiff was an illegal alien. If defendants did not have such a reasonable suspicion, then the preventive measures taken against plaintiff on December 6, 1987, were unlawful and you must find for plaintiff. If you find, on the other hand, that Mr. Lopez' behavior aroused a reasonable suspicion in the minds of the INS agents that he was an illegal alien, then you must then find for the federal defendants.

*Lopez II,* 718 F.Supp. at 1073 (appendix to district court's opinion; quoting district court's jury instructions).

The jury determined this issue antithetic to Lopez' interests. To borrow the district court's summarization, the jury's verdict signified that plaintiff's rights had not been violated since the defendants "had a sufficiently reasonable suspicion to detain [him]" on the occasion in question. *Id.* at 1068. The district court upheld the jury's finding, *id.* at 1069, and Lopez took no appeal from it. The finding has, therefore, become the law of the case. *See Raxton Corp. v. Anania Assoc., Inc.,* 668 F.2d 622, 624 & n. * (1st Cir.1982).

---

1. We have previously noted that the checkpoints "are used for preliminary screening of persons attempting to board domestic flights between Puerto Rico and the continental United States." *Lopez Lopez v. Aran,* 844 F.2d 898, 899 (1st Cir.1988).

2. The damages claim was brought under the imprimatur of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The Court has described *Bivens* as establishing, in general, "that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green,* 446 U.S. 14, 18, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980). *See also Morales v. Ramirez,* 906 F.2d 784, 786 (1st Cir.1990).

3. Plaintiff originally contended that the local police abetted the violation of his rights. He later dropped his case against officer Orozco. His case against officer Santiago Cruz culminated in a jury verdict for the defendant. *Lopez II,* 718 F.Supp. at 1069. Plaintiff has not appealed from this verdict. The constabulary defendants were not the object of any equitable relief granted by the district court.

■ Plaintiff also sought equitable relief which the court below described as comprising "a declaration and an injunction to prevent future violations of his fourth- and fifth-amendment rights." *Lopez II*, 718 F.Supp. at 1069. The fifth amendment claim was never pressed. The other equitable claims were deferred pending completion of the jury phase. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510, 79 S.Ct. 948, 956, 3 L.Ed.2d 988 (1959). When the court turned to the matter of equitable redress, the jury's factfinding was, of course, binding upon the trier as to common issues. *See Davenport v. DeRobertis*, 844 F.2d 1310, 1313–14 (7th Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988); *cf. Blake v. Hall*, 668 F.2d 52, 54 (1st Cir.1981) (no preclusive effect when purport of jury verdict unclear), *cert. denied*, 456 U.S. 983, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982).

Notwithstanding the jury verdict, the district court proceeded to restrain the federal defendants

> ... from subjecting United States citizens to the pre-flight inspection practice authorized and established pursuant to 8 U.S.C. § 1182(d)(7) and 8 C.F.R. § 235.5(a) when the passengers are passing through Luis Munoz Marin Airport but not departing Puerto Rico for the continental United States. No United States citizen at the airport, unless departing Puerto Rico for the continental United States, shall be questioned, detained, or otherwise inspected by INS agents unless the agents have an objectively reasonable and articulable suspicion that the person is an illegal alien.

*Lopez II*, 718 F.Supp. at 1072.[4] This appeal ensued.

### Analysis

Appellants advance a salmagundi of reasons why the injunction should not have been issued or, at least, should have been more narrowly tailored. We need not reach the majority of these asseverations, however, because this is a case, pure and simple, where the district court acted without authority in granting any injunctive relief.

■ We start with bedrock. A court can only grant permanent injunctive relief to a plaintiff who has met certain preconditions. The first of these implicates the doctrine of standing; an injunction-seeking plaintiff must establish that he " 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.' " *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1664–65, 75 L.Ed.2d 675 (1983) (citations omitted). While Lopez, when he filed this suit, alleged a claim for injunctive relief which rose to the level of a case or controversy, a court does not retain authority to grant an injunction, even though the plaintiff originally had standing to ask for one, if during the course of the proceeding the plaintiff loses his toehold on the standing ladder.

■ Closely related to such case-or-controversy considerations is the requirement that a plaintiff must state a "sound basis for equitable relief." *Id.* at 103, 103 S.Ct. at 1666 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 499, 94 S.Ct. 669, 677, 38 L.Ed.2d 674 (1974)). One component of this requirement is that an injunction-seeker must show either that some past unlawful conduct has continuing impact into the future, *see K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir.1989), or else he must show a likelihood of future unlawful conduct on the defendant's part. *See Maine v. United States Dep't of Labor*, 770 F.2d 236, 238 (1st Cir.1985); *Lovell v. Brennan*, 728 F.2d 560, 562 (1st

---

**4.** In *Lopez I*, 844 F.2d at 905–07, we held that the cited statute, 8 U.S.C. § 1182(d)(7) (1982), and the regulation prescinding from it, 8 C.F.R. § 235.5(a) (1986), authorized the INS to conduct minimally intrusive pre-boarding examinations of persons flying from Puerto Rico to the mainland in order to ascertain their status as excludable aliens. A partial text of the statute and regulation were set out in our earlier opinion, *see Lopez I*, 844 F.2d at 901 n. 3 (text of statute); *id.* at 899 n. 1 (text of regulation), and no useful purpose would be served by parroting or augmenting those footnotes here.

Cir.1984). To gain a permanent injunction in the former case, the plaintiff must actually succeed on the merits of his claim by proving that the past conduct violated his rights. *See K–Mart Corp.,* 875 F.2d at 915; *see also Rizzo v. Goode,* 423 U.S. 362, 377, 96 S.Ct. 598, 607, 46 L.Ed.2d 561 (1976). Similarly, if plaintiff is seeking permanent injunctive relief based on the likelihood of future unlawful conduct and seeks to establish the likelihood of a future violation solely by pointing to the likely recurrence or continuation of past conduct, then plaintiff must show that this past conduct, if repeated, would in fact be violative of his rights. *See CIBA–GEIGY Corp. v. Bolar Pharmaceutical Co.,* 747 F.2d 844, 850 (3d Cir.1984), *cert. denied,* 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985); *Newman v. Alabama,* 683 F.2d 1312, 1319 (11th Cir. 1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983). And even after he has met one of these two preconditions, the injunction-seeker must show that he is subject to continuing irreparable injury for which there is no adequate remedy at law. *See K–Mart Corp.,* 875 F.2d at 914–15; *Newman,* 683 F.2d at 1319; *see also Beacon Theatres,* 359 U.S. at 506–07, 79 S.Ct. at 954–55.

In this case, as a matter of law, these threshold requirements were unfulfilled in the court below. It follows inexorably, then, that the lower court had no authority to grant a permanent injunction in Lopez' favor. We explain briefly.

■ Plaintiff's prayer for injunctive relief was based on the following syllogism: (1) my constitutional rights were violated when I attempted to fly from San Juan (Isla Verde) to Mayaguez on December 6, 1987; (2) the procedures employed by INS officials on that day were typical of those used by INS officials generally; (3) I will frequently be flying the same route in the future; therefore (4) it is likely that my rights will be violated in the future. This construct, however, while perhaps valid in the pleading stage, was devastated by the jury verdict—a verdict which the trial judge refused to set aside, *see Lopez II,* 718 F.Supp. at 1067–69, and which Lopez elected not to appeal. The verdict established conclusively, for all purposes germane to this case, that Lopez' constitutional rights were not violated on the sixth of December. This established fact was entitled to collateral estoppel effect when the district court took up the prayer for permanent injunction. *Davenport,* 844 F.2d at 1313–14. As a result, the verdict completely undermined the first premise of petitioner's syllogistic claim for injunctive relief, thereby causing the entire house of cards to collapse. Lopez had no standing thereafter to pursue an abstraction.[5]

■ To be blunt, plaintiff failed on the merits of his case—he was unable to show that any of his rights were abridged on the day in question—and he cannot, therefore, be awarded an injunction against either the very conduct which the jury determined not to be violative of his rights or conduct alleged but unproven. Lopez did, of course, show that prospective intra-island passengers are sometimes asked about their citizenship as they pass the airport checkpoints. Nonetheless, standing alone, such a showing merited no relief; the constitutionality of this limited aspect of the government officials' protocol cannot be gainsaid.

■ Analytically, it is helpful to bifurcate the challenged actions. The point of demarcation distinguishing the two moieties for fourth amendment purposes is the point in time at which a traveler can be deemed to have been "seized" by government actors. It is well settled that seizure occurs "only if, in view of all of the circum-

---

5. It is too basic to require exegetic discussion that Lopez must show his own rights are in jeopardy in order to secure injunctive relief. *See Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (generally, party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties");

*Lopez I,* 844 F.2d at 901 n. 4. Lopez has pointed to no facts which might bring him within any recognized exception to this rule. *See generally Gordon v. Crouchley,* 554 F.Supp. 796, 798 (D.R. I.1982) (discussing limited circumstances in which a litigant may assert a third party's rights).

stances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.); *see also United States v. Viegas*, 639 F.2d 42, 44 (1st Cir.), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981). The mere posing of questions by a government official is not considered to be a seizure. *See Florida v. Rodriquez*, 469 U.S. 1, 5–6, 105 S.Ct. 308, 310–11, 83 L.Ed.2d 165 (1984); *INS v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984); *Florida v. Royer*, 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983); *United States v. Alvarez–Sanchez*, 774 F.2d 1036, 1040–43 (11th Cir.1985); *United States v. Rodriquez–Franco*, 749 F.2d 1555, 1559–60 (11th Cir.1985); *United States v. Berryman*, 717 F.2d 650, 651 (1st Cir.1983) (en banc), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1594, 80 L.Ed.2d 125 (1984); *cf. Lopez I*, 844 F.2d at 905 n. 7 (implying proposition). Hence, INS agents at an airport gate may, without violating the Constitution, inquire about a prospective passenger's citizenship and destination.[6]

■■■■■■ The second phase of the protocol begins when the officials, not content with merely inquiring about citizenship, take additional steps to obtain an answer to the pending question. *See, e.g., Lopez II*, 718 F.Supp. at 1068–69 (describing events occurring upon, and after, defendants' decision to detain plaintiff). To be sure, those actions—which, typically, involve a deten-

tion—comprise a seizure and implicate the fourth amendment. *See Delgado*, 466 U.S. at 216–17, 104 S.Ct. at 1762–63; *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). But the Constitution does not outlaw all warrantless seizures; it outlaws only those which are unreasonable. As we have written in a different context, "[r]easonableness is a concept, not a constant." *United States v. Ocasio*, 914 F.2d 330 at 336 (1st Cir.1990). Above all, reasonableness is a matter of balancing. *See Lopez I*, 844 F.2d at 905. What is "reasonable," then, necessarily varies from case to case.

■■■ In this case, the balancing was performed by the jury. Its verdict for the defendants, as the district court recognized, was based on a determination that seizing plaintiff on the occasion in question was reasonable. *See Lopez II*, 718 F.Supp. at 1069 ("The question for the jury was the reasonableness of the detention, or seizure, in light of its justification."). That determination was, in turn, validated by the district court, which ruled that the jury had a sufficient evidentiary predicate to bottom an exculpatory finding; the seizure was reasonable because it was based on specific and articulable suspicion that Lopez might be an illegal alien. *See id.* at 1068–69. Since Lopez' putative entitlement to injunctive relief was premised on a claim that his fourth amendment rights were violated, the district court was powerless to issue a permanent injunction in his favor once it had been conclusively determined that no such violation occurred.[7]

---

**6.** There is much debate in this case about the authority of the INS, under 8 U.S.C. § 1182(d)(7) and 8 C.F.R. § 235.5(a), to operate a Puerto Rican checkpoint for flights other than to the mainland United States. We do not enter this fray. The INS activity involved here—mere questioning, augmented by further actions only upon the emergence of reasonable suspicion—is authorized under 8 U.S.C. § 1357(a)(1) (1988), which empowers any INS official, without a warrant, to "interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." This authorization to question individuals is not geographically limited: it is as valid in Puerto Rico as in, say, Nebraska; it appertains not only in airports but in factories, *see Delgado*, 466 U.S. 210, 104

S.Ct. 1758, in shopping malls, *see Rodriguez–Franco*, 749 F.2d 1555, and in bus stations, *see Alvarez–Sanchez*, 774 F.2d 1036. The scope of the permissible questioning is bounded, however, and encompasses exactly the precincts in which questioning is permitted by the fourth amendment. *See Zepeda v. INS*, 753 F.2d 719, 725 (9th Cir.1983); *Babula v. INS*, 665 F.2d 293, 295 (3d Cir.1981).

**7.** It is important to note that Lopez' damages case was decided on the merits, rather than on the basis of qualified immunity. *See Lopez II*, 718 F.Supp. at 1068. Had it been otherwise, then there might have been no irreconcilable conflict between the denial of money damages and the granting of injunctive relief. Inasmuch

■ Nor is Lopez assisted by his prayer for declaratory relief. Although the court below also purported to grant a declaration of rights, the declaration, read in context, branded unconstitutional only pre-flight inspections (1) which amount to seizures and (2) for which no specific and articulable suspicion of illegal alienage exists. As has been amply demonstrated, no such unconstitutional seizure occurred in this case. Moreover, the INS conceded forthrightly at oral argument in this court that it claimed no power to detain or seize a prospective passenger merely because he or she refused to answer an agent's random citizenship inquiry. The declaration of rights was at most confirmatory of what all parties agreed to be settled law, and thus, superfluous.

■ To the extent, if at all, that the declaration purports to go beyond an uncontroversial statement of the obvious, the district court was without authority to issue it, for much the same reason as the court was powerless, on this record, to grant injunctive relief. *See Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969) (declaratory relief in constitutional cases not available when facts show only an abstract rather than a concrete controversy); *Hendrix v. Poonai*, 662 F.2d 719, 721–22 (11th Cir. 1981) (petitioner's prayer for declaratory relief not justiciable when hypothetical in nature); *Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc.*, 439 F.2d 871, 873 (1st Cir.1971) (declaratory judgment action must be based on a case which is "appropriate for judicial determination and not hypothetical or abstract"). Either way, the declaration served no legitimate purpose and should not have been promulgated.

### Conclusion

To recapitulate, once the jury rejected plaintiff's constitutional claim, he was left without any sound basis for equitable redress. He no longer had standing to press for a restraining order or a declaratory judgment. The final chapter of *Lopez II* must inevitably recite that, given the jury verdict, the lower court's formulation of an injunction and declaration in plaintiff's favor was unsupportable. Accordingly, we reverse the grant of equitable relief and remand the cause to the court below for vacation of the restraining order and entry of judgment on the jury verdict.

■ Although supererogatory for present purposes, we reemphasize, in light of appellee's avowed concerns of principle, what we pointed out in note 6, *supra:* today's decision in no way suggests that the controlling statute, 8 U.S.C. § 1357(a)(1), applies differently in San Juan than in any other part of the United States. The fourth amendment permits immigration officers—whether at a factory in California or an airport in Puerto Rico—to ask questions about immigration status as long as those whom they question can freely disregard the questions and continue about their business. *See Delgado*, 466 U.S. at 216, 104 S.Ct. at 1762; *Mendenhall*, 446 U.S. at 553–54, 100 S.Ct. at 1876–77 (opinion of Stewart, J.). Appellee's efforts to raise broader questions fail because, given the jury verdict, he cannot use the example of his own treatment as showing that immigration officers will behave unconstitutionally in the future. And without that evidence, the record does not show that the officers, absent reasonable suspicion, typically do more than what they say they do: merely ask questions. Whether some future plaintiff can, or will, show that INS agents go beyond questioning, and do so in violation of the Constitution, remains to be seen.

*Reversed and remanded.*

---

as "qualified immunity does not address the substantive viability of [a plaintiff's] claim," it is easily conceivable that a plaintiff who is entitled to win on the merits nevertheless may be barred by the qualified immunity doctrine from recovering money damages. *Collins v. Marina–Mar-* *tinez*, 894 F.2d 474, 478 (1st Cir.1990); *see generally Goyco de Maldonado v. Rivera*, 849 F.2d 683 (1st Cir.1988) (distinguishing between quality and quantum of proof necessary to prevail on qualified immunity defense as opposed to that needed to gain injunctive relief).