Maria OCASIO

v.

CITY OF LAWRENCE, MASSACHUSETTS, et al.

Civ. A. No. 89–0733–Z.

United States District Court, D. Massachusetts.

March 27, 1992.

James Breslauer, Merrimack Valley Legal Services, Lowell, Mass., Howard Friedman, Boston, Mass., for plaintiff.

Robert J. O'Sullivan, Office of City Atty., Carmine W. DiAdamo, DiAdamo Law Office, Lawrence, Mass., Edward P. Reardon, Austin M. Joyce, Reardon & Reardon, Worcester, Mass., Clark W. Yudysky, David C. Jenkins, Gallagher & Gallagher, LaDonna J. Hatton, Atty. General's Office, Crim. Div., Boston, Mass., for defendants.

## MEMORANDUM DECISION

ZOBEL, District Judge.

Plaintiffs allege that the defendants' policy regarding the seizure of Food Stamp Identification Cards ("the Cards") contravenes the Fourth Amendment of the United States Constitution (applied against the defendants by virtue of the Fourteenth Amendment) as well as the Food Stamp Act. They seek declaratory and injunctive relief; they have also moved for class certification. In an effort to resolve the litigation, the parties have submitted a joint statement of stipulated facts and the following legal question to the Court for decision:

Does the policy of the City of Lawrence in seizing Food Stamp identification cards from individuals, as adopted and implemented beginning in January, 1989, and as amended in August, 1990, violate plaintiffs' federally guaranteed rights, under the Fourth and Fourteenth Amendments of the United States [Constitution] and/or under the Food Stamp Act, 7 USC 2011 *et seq.*

■ Before addressing the merits of the question presented for decision, two preliminary issues require discussion—mootness and standing. Defendants argue that the question of the original policy's constitutionality is moot, because they terminated the policy. Plaintiffs' damage claims, however, survive the policy's termination and require decision on the policy's constitutionality. Furthermore, voluntary repeal of a challenged law does not render the question of the constitutionality of the law moot. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982). With respect to the new policy, defendants argue its constitutionality presents a moot issue, because there have been no seizures pursuant to it.[1] Since they also maintain, however, the policy is "in effect," that provides the necessary adverseness.

■ Defendants next raise standing as a bar to consideration of the merits. An injunction seeking plaintiff must establish either present injury or immediate danger of injury. *Lopez v. Garriga*, 917 F.2d 63, 67 (1st Cir.1990). Plaintiffs satisfy both prongs. When the defendants seized plaintiffs' food stamp identification card, she suffered a continuing direct injury (without it she could not spend her food stamps) until after the filing of the complaint. *Compare Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (constitutionally objectionable practice ceased prior to filing of complaint, no standing). Although the preliminary injunction terminated plaintiff Ocasio's injury by ordering the card's return, plaintiff had

---

1. Alternatively, they contend the named plaintiffs lack standing, because absent seizures they face no threat of future harm. The question of the plaintiffs' standing to litigate that issue is addressed below.

preserved the issue before then by seeking class certification. *See County of Riverside v. McLaughlin,* — U.S. —, 111 S.Ct. 1661, 1667, 114 L.Ed.2d 49 (1991) (obtaining class certification preserves merits of dispute).[2]

■ Second, plaintiffs, and the putative class members, face a "real and immediate" threat of again having their Food Stamp Identification Cards seized. *Lyons,* 461 U.S. at 102, 103 S.Ct. at 1665. The seizures at issue in this case were not random acts, but actions pursuant to an affirmative City policy crafted and promulgated by the Mayor himself. *Compare Lyons,* 461 U.S. at 108, 103 S.Ct. at 1668 (occasional unconstitutional act insufficient to confer standing for injunctive relief) *with McLaughlin,* 111 S.Ct. at 1666–67 (unconstitutional acts pursuant to policy, standing conferred). Although the City has made no seizures under the new policy, the undisputed facts establish it is still in force. In light of the similarity between the two policies, the adoption of the new policy during the pendency of this litigation and the failure of the new policy to address the substance of plaintiffs' complaints, plaintiffs still face an imminent threat of having their cards seized.

■ Turning to the merits of the stipulated question, the parties agree that the constitutionality of the policies under the Fourth Amendment turns on whether the policies authorize or direct police officers to seize cards in plain view absent probable cause to believe the seized cards were evidence of a crime.[3] *See United States v. Johnston,* 784 F.2d 416, 420 (1st Cir.1986) (citing *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983)). Probable cause exists when an officer knows facts that "would 'warrant a man [or woman] of reasonable caution in the belief' " that an item may be useful as evidence of a crime, in this case welfare

fraud. *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)).

The City's original policy requires officers to seize the Cards, in cases of drug arrests, when the police "believe there is evidence" of welfare fraud. By its own terms that policy does not require probable cause and a requirement of "evidence" is not the same as a showing of probable cause. Defendants argue the word "believe" instructs officers to draw upon their law enforcement training and make a probable cause determination. The undisputed facts belie this argument. No police officer received training regarding eligibility requirements for *any* welfare program. The one officer trained in the elements of welfare fraud was erroneously instructed that possession of assets exceeding $250 violated the law. In fact, the permitted amount of assets ranges from $250 to $3000 depending upon the program and the composition of the household. 106 Code Mass.Regs. §§ 363.110, 304.110, 304.120, 313.301. Moreover, notwithstanding this instruction, the officer in charge of the program stated he was unaware of the asset and income limits of the different regulations. In other words, the officers had no law enforcement training from which to draw.[4] Thus, the original policy requires seizures from persons who had not violated the law even if the seizing officers factual conclusions were correct.

■ Defendants' amended policy suffers from a similar defect. The Constitution requires probable cause before the police seize items, the defendants' policy requires seizures of the Cards based upon "reasonable cause." Defendants' standard resonates with notions of suspicion, a constitutionally insufficient basis. *Cf. Arizona v.*

---

**2.** A final judgment on plaintiffs' damage claims would necessarily include a decision on the constitutionality of the underlying policy.

**3.** Seizures made pursuant to search warrants have not occurred under the policies and are not at issue in the instant litigation. For pur-

poses of the pending motion only, plaintiffs concede the Cards were in plain view.

**4.** There is no suggestion in the record that the Lawrence Police Department has any experience with welfare fraud cases other than pursuant to the policies at issue in this litigation.

*Hicks*, 480 U.S. 321, 326–28, 107 S.Ct. 1149, 1153–54, 94 L.Ed.2d 347 (1987) (rejecting plain view search predicated upon "reasonable suspicion"). That defendants eschewed the long established probable cause standard for a standard of their own invention while defending a claim that their earlier policy required seizures absent a constitutionally sufficient showing further supports the interpretation that "reasonable cause" is a less stringent standard than probable cause.

In an attempt to avoid the intricacies of welfare asset-income rules, the City's new policy justifies seizures as a means to gather evidence of a recipient's failure to report income to the Welfare Department. However, prior to the expiration of the ten day period allotted for reporting changed financial circumstances, no failure to report crime has occurred. 106 Code Mass.Regs. § 301.420. The policy authorizes seizures of the Cards irrespective of this time period.

Accordingly, defendants' original and new policies violate plaintiffs' constitutional rights.